Monroe MARSHALL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–79–81.

Court of Criminal Appeals of Oklahoma.

Nov. 17, 1980.

Manners, Cathcart & Lawter, Jamie Pitts, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Timothy S. Frets, Asst. Atty. Gen., Michael Lee Bardick, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

On October 27, 1977, the appellant, Monroe Marshall, and three of his employees were at the Travel Inn bar in Edmond, Oklahoma. The employees included his brother Barney, his brother–in–law Dean McDaniel and Jerry Carder. The men had stopped there after work to drink some beer. The appellant left for dinner, and his wife later called the bar to tell Dean McDaniel and Jerry Carder that the appellant was not coming back to the bar. This angered the two men because they lived with the appellant and his family and they did not have a ride home.

It is unclear from the record why the appellant returned to the bar, but later in the evening he and his wife went there. Mr. McDaniel and Mr. Carder were waiting for them outside. The two men announced they were quitting and wanted their money, so the appellant and his wife drove home, got the money and returned to the bar, where they paid the men. The four of them then went inside the bar and Mr. McDaniel and Mr. Carder began playing pool, while the appellant and his wife sat at the bar with brother Barney. Mr. Carder and Mr. McDaniel got into one argument, but settled down after the bar owner ordered them to stop. A few minutes later, an argument and fight again developed between Mr. Carder and Mr. McDaniel. This time the appellant stood between them to try to stop the fighting.

The testimony is conflicting at this point. The appellant testified that Dean McDaniel hit him in the mouth twice and that Barney pushed Dean away. Jerry Carder then hit Barney across the back with a pool cue and threatened to run the pool cue down the appellant's throat. The appellant testified that he became frightened and started stabbing Jerry. Other witnesses testified that the appellant and Barney picked up pool cues and began hitting at Dean and Jerry to break up their fight. They also testified to seeing the appellant pull a knife out of Mr. Carder's chest.

However the stabbing occurred, the appellant and his wife and son, who had joined them, then fled the bar, and the defendant and his son left town. They drove to Bristow, Dustin and Wetumka, Oklahoma; but while in Dustin, the appellant learned that his wife had been arrested. He returned to Edmond and was also arrested.

Due to a lapse of memory, the appellant could not remember the details of the stabbing. However, approximately nine months after the stabbing, he went to a psychiatrist for treatment at the insistence of defense counsel. The psychiatrist testified that the appellant regained his memory as a result of being given sodium pentothal. At an in–camera hearing during trial, however, the judge excluded the words "sodium pentothal," "truth serum" or "drugs" from being used before the jury.

Based on the above facts and the death of Jerry Carder, the appellant was convicted of Manslaughter in the First Degree, in Oklahoma County Case No. CRF–77–3918. He was sentenced to seven (7) years in prison.

■ In his first assignment of error, the appellant argues that the court erred in refusing to allow testimony as to the use of sodium pentothal. He claims that his self–defense argument was rendered ineffective as a result of the trial court's ruling. Currently, the law in Oklahoma regarding evidence of sodium pentothal or "truth serum" tests is that they are inadmissible for any purpose. *State v. Cook*, Okl.Cr., 574 P.2d 1073 (1978). The reasoning usually given is that the tests have not demonstrated a suf-

ficient degree of dependability to justify their use in the trial of criminal cases. See, *Henderson v. State*, 94 Okl.Cr. 45, 230 P.2d 495 (1951).

Other jurisdictions have admitted evidence of truth serum tests in varying degrees. The California Supreme Court has allowed the actual responses of the witness made while under the influence of the "truth serum." However, these statements were not offered for the truth of the matter asserted, but rather, as support for the psychiatrist's opinion. *People v. Blair*, 25 Cal.3d 640, 159 Cal.Rptr. 818, 602 P.2d 738 (1979). Testimony that a truth drug was given to the witness and also conclusions and opinions of a psychiatrist based upon the responses given have been allowed by courts in New York, California, Illinois, Washington, and Kansas. *People v. Blair*, 25 Cal.3d 640, 159 Cal.Rptr. 818, 602 P.2d 738 (1979), *People v. Myers*, 35 Ill.2d 311, 220 N.E.2d 297 (1966), *People v. Ford*, 304 N.Y. 679, 107 N.E.2d 595 (1952), *State v. White*, 60 Wash.2d 551, 374 P.2d 942 (1962), *State v. Chase*, 206 Kan. 352, 480 P.2d 62 (1971).

■ In light of the law in Oklahoma and the general suspicion of the validity of "truth serum" tests, the proponent of the evidence must bring forth facts and reasons to allay the court's concern. There must be a proper foundation laid for all evidence which is admitted into testimony. The proponent of such evidence has the burden of showing the underlying scientific basis and reliability of the expert's testimony. In the case at hand, although Dr. Prosser's credentials were established, there was no offer of proof regarding the validity of the sodium pentothal test. If a judge is ever to admit any testimony concerning the test or its results, he must be assured that the evidence is what it purports to be, otherwise it is clearly inadmissible. Of course, the final decision on the admissibility of any evidence is a matter within the trial court's discretion. See *Walton v. State*, Okl.Cr., 594 P.2d 794 (1979).

■ Even assuming that the trial court erred by not admitting testimony of the sodium pentothal test, it would be harmless error. The trial court limited Dr. Prosser's testimony by excluding three references to the treatment he could not mention: "sodium pentothal," "truth serum" or "drug." Dr. Prosser was allowed to use the words "psychiatric investigations." The witness also indicated during the in–camera hearing that the "technique doesn't really have to be described." Further, Dr. Prosser testified, "[I]n other words, this is not the only technique and we don't have to mention the technique, most of the jury won't know anything about the techniques anyway." Surely, considering Dr. Prosser's remarks at the in–camera hearing, the exclusion of these five words did not substantially impair the appellant's defense, or otherwise deny him any substantive right.

■ The appellant also claims under this assignment that the trier of fact was denied any information concerning the basis for Dr. Prosser's opinion and conclusions as to his actions on the evening in question. Dr. Prosser stated his qualifications in the initial stages of his testimony. He also testified as to five different psychiatric and medical tests given to the appellant. Dr. Prosser explained how the tests were given and his opinion of the results. He testified that the results indicated an emotional suppression of memory which was then treated by psychological therapy. Therefore, although the witness could not testify to the full and exact treatment given, he did give the jury a background which he himself felt was sufficient.

■ Additionally, the appellant contends that not being allowed to present evidence as to the use of sodium pentothal denied him the ability to rebut the remarks made by the State about his sudden recovery of memory. Dr. Prosser on direct examination stated, "We were very fortunate, I think, to help him regain it rather rapidly, and which we did it by using some psychiatric techniques." Although the State improperly remarked in closing argument that the appellant regained his memory very quickly, the defense counsel in their closing arguments

stated the defendant had gained his memory by going to a psychiatrist and going through therapy. This tended to rebut the misimpression given by the State. The defense counsel also stated that he [the defense counsel] delayed sending the appellant to the psychiatrist to be treated for his lapse of memory. After a careful examination of the transcript in context, it is apparent the appellant got the chance to explain his sudden return of memory. Although defense counsel was prevented from going into the precise nature of the therapy, the point that he regained his memory by psychiatric treatment was clearly made. Therefore, the appellant was not denied the opportunity to rebut the State's remarks regarding his sudden memory return.

The second assignment of error is that the sentence imposed is excessive in view of the facts and circumstances surrounding the case. This is not so. Title 21 O.S.1971, § 715, prescribes a minimum sentence of four years for a conviction of first degree manslaughter. Considering that there is no maximum, the seven–year sentence imposed on the defendant is relatively light. This sentence, when considered in light of the circumstances of the case, cannot be considered excessive.

The judgment and sentence are AFFIRMED.

CORNISH, P. J., and BUSSEY, J., concur.