**Robert James BOSTIC, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2427.**

Court of Appeals of Alaska.

April 21, 1989.

Dennis E. McKelvie, Fairbanks, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Robert James Bostic was convicted, following a jury trial, of two counts of sexual abuse of a minor in the second degree. Superior Court Judge Richard D. Savell sentenced Bostic to partially consecutive

terms totaling eleven years with one year suspended. Bostic appeals, contending that the trial court erred in admitting expert testimony at trial and in refusing to declare a mistrial. Bostic also contends that his sentence is excessive. We affirm.

Bostic was convicted in 1985 of sexually abusing his daughter, P.B. He was sentenced to serve ten years with seven years suspended and was allowed to serve the unsuspended portion of the sentence in six-month increments during consecutive winters, so that he would be free to spend the intervening summers working on his mining claim. In 1987, Bostic was again charged with sexually abusing P.B. The new charges stemmed from two episodes of sexual touching that were alleged to have occurred during the summer of 1987.

At the trial on the new charges, the state called P.B. and Deborah Bostic, Bostic's wife, who had witnessed part of the second incident of sexual abuse. During his cross-examination of these witnesses, Bostic sought to discredit P.B.'s account of sexual touching by suggesting that the child had fabricated the incidents. Bostic evidently established that, following his 1984 sexual abuse convictions, Deborah Bostic had instructed P.B. to report to her immediately if Bostic attempted any further sexual contact. Bostic apparently emphasized that P.B. did not immediately report the new sexual touchings to her mother and that P.B.'s initial descriptions of the touchings were less detailed and inculpatory than subsequent descriptions that she gave to the Alaska State Troopers.[1]

In response to Bostic's cross-examination of P.B. and Deborah Bostic, the state called as its next witness Elizabeth Scollan, a psychiatric social worker with extensive experience in counseling sexually abused children and sexual offenders. The state proposed to have Scollan testify that victims of child sexual abuse are frequently reluctant to report incidents of molestation and that, when they do report abuse, they tend to "minimalize" their description of the sexual touchings.

Bostic objected to Scollan's testimony. His primary objection was that the state had failed to give prior notice of its intent to call Scollan as an expert witness and had failed to disclose the area of her proposed testimony. Bostic also objected to the subject matter of Scollan's proposed testimony. Finally, Bostic pointed out that Scollan had engaged in counseling with Bostic and his family following Bostic's 1985 sexual abuse conviction. Bostic maintained that his counseling relationship with Scollan would render any testimony based on Scollan's familiarity with the defendant and his family privileged and therefore inadmissible.

The state countered Bostic's objections by insisting that Scollan's testimony was being offered in response to Bostic's attempted impeachment of P.B. and Deborah Bostic. The state claimed that Scollan was therefore a "rebuttal" witness as to whom the normal requirements of pretrial discovery did not apply. The state further maintained that the subject matter of Scollan's proposed testimony was admissible under this court's decision in *Rodriquez v. State*, 741 P.2d 1200 (Alaska App.1987). Finally, the state argued that Scollan's testimony would not entail problems of privilege, because Scollan would testify only about general characteristics of sexually abused children and would not be asked for any information derived from her counseling relationship with Bostic or his family.

After hearing from counsel, Judge Savell found that Scollan's proposed testimony was responsive to issues raised by Bostic on cross-examination of P.B. and Deborah Bostic and that the proposed testimony was admissible under *Rodriquez*. The judge believed that any problems of privilege or undue prejudice could be obviated by limiting Scollan's testimony to general characteristics of sexually abused children.

Judge Savell also reasoned that any problems arising from lack of prior notice

---

**1.** Bostic has not designated the testimony of these witnesses for inclusion in the record on appeal. Our characterization of Bostic's strate-

gy is gleaned from references made by the trial court and the parties during other portions of the trial.

to Bostic could be resolved by postponing Scollan's testimony until Bostic's counsel had an opportunity to prepare for cross-examination and by allowing any additional time necessary for Bostic to retain his own expert. Accordingly, the court precluded the state from presenting Scollan until at least the following day, at the conclusion of the state's case-in-chief. The court directed that Scollan make herself available to speak with Bostic's counsel after court had recessed for the day. Although Judge Savell indicated his tentative view that Scollan's testimony would be admissible, either at the conclusion of the state's case-in-chief or on rebuttal, the judge invited Bostic's counsel to present, on the following day, any additional objections and arguments against admitting Scollan's testimony. Judge Savell also made it clear that defense counsel could request additional time to prepare cross-examination or to secure a defense expert.

On the following day, Bostic's counsel indicated that he had interviewed Scollan and had decided against seeking a defense expert to refute her proposed testimony. Counsel similarly declined to request a continuance. Instead, counsel reiterated his claim of surprise, emphasizing that the prosecution had failed to provide timely notice of Scollan's proposed testimony. Counsel insisted that he had planned Bostic's defense on the assumption that the state would not be presenting expert testimony and that, by the time he was informed that the state intended to call Scollan, he had already irrevocably committed

himself to the originally-planned defense. According to Bostic's counsel, by the time the state announced its plans to call Scollan, it was already too late to pursue a different approach. Thus, in counsel's view, the only viable alternative was to preclude Scollan from testifying or to declare a mistrial.

Judge Savell declined to grant a mistrial or to preclude Scollan's testimony, finding no basis for concluding that Bostic had suffered any prejudice that could not be cured by a continuance for additional preparation. The judge restated his conclusion that Scollan's proposed testimony was a fair response to Bostic's cross-examination and was within the scope of expert testimony approved by this court in *Rodriquez.* Accordingly, the judge ruled that the state would be allowed to call Scollan, either in its case-in-chief or on rebuttal. In response to the court's ruling, the state withdrew Scollan as a witness in its case-in-chief and indicated that it would rely on her only as a rebuttal witness. The state then rested its case-in-chief.

Bostic proceeded to present his defense, electing to testify in his own behalf. Thereafter, Scollan was called by the state on rebuttal and testified over Bostic's continuing objection.[2] In the course of her testimony, Scollan referred at one point to a remark that P.B. had made in her testimony. Based on Scollan's reference to P.B., Bostic requested a mistrial. The court denied this request. At the conclusion of the case, the jury found Bostic

---

**2.** In testifying in his own defense, Bostic raised issues relating to the sexual abuse counseling that he had participated in after being charged in 1984 with sexually abusing P.B. His testimony led the court to rule that Bostic had waived any claim of privilege with respect to disclosures that he had previously made in counseling. Scollan was thereafter permitted to enlarge the scope of her originally proposed testimony by describing certain statements Bostic had made to her in the counseling sessions.

Bostic does not challenge the trial court's conclusion that his own testimony opened the door to presentation of the additional testimony by Scollan. He does argue, however, that his testimony concerning his private counseling was elicited in response to the court's ruling that Scollan would be permitted to testify on rebut-

tal. According to Bostic, it was reasonably necessary for him to testify as he did in anticipation of Scollan's rebuttal testimony. Thus, in effect, Bostic contends that the court's decision to allow Scollan to testify prejudiced him by requiring him to open up, in his own testimony, areas that would otherwise have remained privileged.

This argument is unpersuasive. As the trial court properly concluded on this score, Scollan's originally proposed testimony would have been restricted to a general description of "minimalization" by sexually abused victims. Nothing in this proposed line of testimony would logically compel Bostic to respond with testimony concerning his own progress in sexual abuse counseling and his personal feelings towards P.B.

guilty, as charged, of two counts of sexual abuse of a minor in the second degree.

■ On appeal, Bostic renews his contention that it was error to allow Scollan to testify. His principal argument, as it was below, is that the state failed to provide him with notice of its intent to rely on Scollan or with discovery concerning the nature of Scollan's proposed testimony.

The state, on appeal, abandons the position that it took below and concedes that Bostic was entitled to pretrial notice and discovery of Scollan's proposed testimony. The state nevertheless contends that the only appropriate remedy for the discovery violation was the one relied on by the trial court, namely, a continuance to allow time for additional preparation.

We find this issue to be troubling. The record in this case establishes that the state deliberately withheld pretrial notice of its intent to rely on Scollan and failed to make any advance disclosure concerning the subject matter of Scollan's proposed testimony. The trial prosecutor attempted to justify his conduct by maintaining that, because the state planned to call Scollan only in the event that Bostic attempted to impeach P.B.'s testimony, Scollan could properly be considered a "rebuttal" witness and, as such, was exempt from the normal requirements of pretrial discovery.

Admittedly, the prosecutor apparently sincerely believed that his rationale for withholding pretrial discovery was legally sound. Nevertheless, this rationale had been categorically rejected by the Alaska Supreme Court in *Howe v. State*, 589 P.2d 421, 423–25 (Alaska 1979). *Howe*, a case that was settled precedent when Bostic's case was tried, involved an argument virtu-

ally identical to that advanced by the state below:

> The state contends here that its psychiatrist's report need not be produced before the trial ... because the psychiatrist who prepared it will be called as part of the state's rebuttal case. The state correctly notes that it has no obligation to come forward with evidence that Howe is sane until the defense presents some evidence that he is insane; thus it will be during the rebuttal portion of the trial that the state's psychiatrist will be called.

*Howe*, 589 P.2d at 423 (footnote omitted).

The court in *Howe* rejected the state's argument, finding pretrial disclosure to be required under the provisions of Alaska Criminal Rule 16(b)(1).[3] The court stated:

> [W]e think that subsection (i) of Criminal Rule 16(b)(1) does not permit an across the board exception for rebuttal witnesses. If the witness is a person known by the prosecution to have knowledge of relevant facts, then his name and address must be disclosed and if he has given a statement that too must be disclosed. The discovery contemplated by subsection (i) is intended to take place at an early stage in the proceedings, and at that stage the prosecution often will have no clear idea who will be presented as witnesses at trial and who, among the witnesses, will be presented in the case in chief and who will be reserved for rebuttal.

*Howe*, 589 P.2d at 424 (footnotes omitted).

In reaching this conclusion, the court emphasized the strong policies favoring broad pretrial disclosure, as those policies were described in commentary to the A.B.A. Standards:

> (i) The names and addresses of persons known by the government to have knowledge of relevant facts and their written or recorded statements or summaries of statements;
>
> · · · ·
>
> (iv) Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons[.]

**3.** Criminal Rule 16(b)(1) provides, in relevant part:

(b) *Disclosure to the Accused.*

(1) *Information within possession or control of prosecuting attorney.* Except as is otherwise provided as to matters not subject to disclosure and protective orders, the prosecuting attorney shall disclose the following information within his possession or control to defense counsel and make available for inspection and copying:

[T]he commentary to the A.B.A. standard makes it clear that reports of experts are to be produced regardless of whether the expert is to be used by the prosecution in its case in chief or in rebuttal or, for that matter, at all:

The need for full and fair disclosure is especially apparent with respect to scientific proof and the testimony of experts. This sort of evidence is practically impossible for the adversary to test or rebut at trial without an advance opportunity to examine it closely. Examples of the critical importance of accurate expert evaluation of evidence are legion ... [a]nd it is virtually impossible for evidence or information of this kind to be distorted or misused because of its advance disclosure....

*Howe*, 589 P.2d at 423 (citing ABA Standards Relating to Discovery and Procedure Before Trial, at 66–67 (Approved Draft 1970)).

Particularly noteworthy in *Howe* was the supreme court's rejection of the state's argument that midtrial continuances are a viable alternative to pretrial discovery:

In this case the state has offered the defendant a continuance after he rests his case in chief. At that point the state suggests that it will produce its expert's report and allow the defendant whatever time is necessary to investigate and prepare for cross-examination of the psychiatrist. A continuance, however, is at best an awkward and disruptive substitute for pre-trial discovery. In the case of technical reports the time needed to prepare a response may be too long to hold the jury and a mistrial may be the result. Moreover, under certain circumstances such as those involving strategic decisions concerning the conduct of the trial a continuance is not an effective substitute for pre-trial discovery.

*Howe*, 589 P.2d at 424 (citation omitted).

Despite the supreme court's strong suggestion to the contrary in *Howe*, the state insists on appeal that a continuance, rather than preclusion of Scollan's testimony or a mistrial, was the only appropriate remedy for its discovery violation in the present case. The state points out that *Howe* involved a petition for review in which the supreme court decided the discovery issue prior to trial. Thus, according to the state, *Howe* decided only that pretrial disclosure was the preferred alternative to a midtrial continuance and did not purport to determine the appropriate remedy when a discovery violation is brought to light after trial has already begun.

In support of its position, the state cites the Alaska Supreme Court's decision in *Des Jardins v. State*, 551 P.2d 181 (Alaska 1976), as well as subsequent decisions of this court,[4] all of which stand for the proposition that the appropriate remedy for discovery violations is normally a continuance rather than a mistrial or preclusion of evidence. These cases do provide support for the state's position, but only to a limited extent. Although these cases make it clear that a continuance is ordinarily the appropriate remedy for a discovery violation, they do not purport to establish that it is the exclusive remedy. Implicit in the decisions is the assumption that, in most cases, a continuance will actually suffice to cure any prejudice resulting from late disclosure.

As *Howe* specifically recognizes, however, "under certain circumstances such as those involving strategic decisions concerning the conduct of the trial a continuance is not an effective substitute for pre-trial discovery." *Howe*, 589 P.2d at 424. Thus, when defense counsel, in reasonable reliance on discovery materials actually furnished by the state prior to trial, has already made strategic decisions that cannot be reversed without prejudice to the defendant, the Alaska Supreme Court has not hesitated to hold that a mistrial rather than a continuance is necessary. *See Stevens v. State*, 582 P.2d 621 (Alaska 1978).

---

**4.** *See, e.g., Dyer v. State*, 666 P.2d 438 (Alaska App.1983); *State v. Lewis*, 632 P.2d 547 (Alaska App.1981). *See also Scharver v. State*, 561 P.2d 300 (Alaska 1977). *But see Stevens v. State*, 582 P.2d 621, 624 n. 9 (Alaska 1978).

In the present case, although Judge Savell apparently mistakenly accepted the state's argument that pretrial discovery was unnecessary because Scollan was a rebuttal witness, the judge did delay Scollan's testimony in order to provide the defense with ample opportunity to speak with Scollan, to prepare for cross-examination, and to formulate coherent and comprehensive objections to her testimony. The judge further made it clear that he would consider a request for an additional continuance and would give Bostic ample time to retain his own expert to refute Scollan's testimony.

Bostic elected to pass up any additional continuance and declined the opportunity to call a defense expert. Instead, Bostic repeatedly asserted—and continues to assert on appeal—that a continuance would have been futile because he had already made strategic decisions that could not be altered.

If the record supported Bostic's claim of prejudice, we would be highly sympathetic to his position and would be inclined to hold that the superior court erred in refusing to preclude Scollan from testifying. The record, however, is devoid of any meaningful support for Bostic's claim of prejudice.

Although Bostic has repeatedly complained that he had already suffered irreparable prejudice by the time he learned that the prosecution intended to call Scollan as an expert witness, Bostic's complaints have been wholly conclusory. Both below and on appeal, Bostic has failed to point out any irreversible strategic choices that he made prior to receiving notice of the state's intent to call Scollan. Nor has Bostic specified any way in which he relied to his detriment on the assumption that no expert would be called by the state.

In permitting Scollan to testify, the trial court considered and rejected as unsubstantiated Bostic's repeated assertions that the untimely notice resulted in irreparable damage to his case. We are unable to conclude that the trial court's decision was clearly erroneous. Although the abbreviated appellate record that Bostic has designated precludes us from independently conducting a comprehensive review for possible prejudice, our review of the record currently before us fails to reveal any basis for Bostic's claim that a continuance would not have cured the prejudice stemming from the state's discovery violation. Accordingly, we hold that the failure to provide appropriate pretrial discovery did not require preclusion of the disputed testimony.[5]

As we noted at the outset of our discussion on this point, however, we find the circumstances surrounding the discovery violation in the present case troubling. We therefore believe this to be an appropriate occasion to repeat the admonition expressed by the Alaska Supreme Court in *Des Jardins v. State:*

> [T]he lack of prejudice here was purely fortuitous. In future cases we will continue to scrutinize prosecutorial conduct in this area, and will not hesitate to reverse where it appears that the defendant has been prejudiced by such action.

551 P.2d at 186.

◼ Bostic advances two additional arguments in connection with his claim that the trial court erred in allowing Scollan to testify. First, Bostic contends that the state failed to satisfy the foundational requirement established in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), as adopted by the Alaska Supreme Court in *Contreras v. State,* 718 P.2d 129 (Alaska 1986). Under *Frye,* before an expert is allowed to voice an opinion based on a novel scientific theory or technique, the theory or technique must be shown to have "gained general acceptance in the particular field in which it belongs." *Frye,* 293 F. at 1014.

Although testifying as an expert, Scollan hardly seems to have been expressing opinions based on any novel theory or technique. Scollan did not purport to identify any controversial "profile" or "syndrome"

---

**5.** In conjunction with this issue, Bostic claims that the trial court's order allowing Scollan to testify deprived him of effective assistance of counsel. Bostic cites no authority for this proposition. We find no merit to his claim.

associated with sexually abused children. She did not rely on any unusual theory or technique as a basis for her opinions. Nor did she purport to conclude that P.B. was a sexually abused child. In fact, Scollan was barred from expressing any opinion whatsoever as to whether P.B. had been sexually abused or whether P.B.'s claims against Bostic were truthful.

Scollan merely relied on her own extensive observation of sexually abused children and on her familiarity with the literature in the field to express the view that sexually abused children characteristically find it difficult to report molestation and tend to "minimize" when they do report instances of abuse. Scollan did not intimate that similar conduct could not be displayed by children who had not been sexually abused. Bostic has provided nothing to indicate that Scollan's views on this issue might be novel, unreliable, or controversial. Under the circumstances, we find no basis for concluding that the *Frye* requirement was violated in this case. *See Thiel v. State*, 762 P.2d 478, 485 (Alaska App.1988).

■ Bostic also contends that Scollan's testimony improperly "buttressed the credibility" of P.B., in violation of *Rodriquez v. State*, 741 P.2d 1200, 1203–05 (Alaska App. 1987). *See also Haakanson v. State*, 760 P.2d 1030, 1036 (Alaska App.1988); *Anderson v. State*, 749 P.2d 369, 373–74 (Alaska App.1988); *Colgan v. State*, 711 P.2d 533, 534 (Alaska App.1985).

In *Rodriquez*, we held it improper for an expert witness to "validate" the testimony of a child sexual abuse victim, or to act as a "human polygraph," by expressing an ostensibly scientific opinion as to the credibility of the victim's claim of sexual abuse. We recognized, on the other hand, that expert testimony generally describing characteristic behavior of sexually abused chil-

dren could serve a legitimate purpose when offered to negate a claim or inference that the complaining witness' behavior in a given case was inconsistent with a truthful accusation of sexual abuse. *Rodriquez*, 741 P.2d at 1203–05.

In the present case, Bostic, through cross-examination, had apparently implied that P.B. was fabricating her claim of sexual abuse because she did not immediately report the abuse and because her initial report was incomplete, lacking much of the detail that P.B. subsequently provided to the police. Scollan's testimony was directly responsive to Bostic's attempts to impeach P.B., and it clearly fell within the latter, rather than the former, category of expert testimony that we discussed in *Rodriquez*.[6] We find no abuse of discretion in the trial court's decision to allow Scollan to testify.

■ Bostic next contends that the trial court erred in denying his motion for a mistrial, which was prompted by a reference to P.B. that Scollan made during her testimony. The trial court cautioned Scollan to avoid specific references to P.B.'s situation and to the circumstances of Bostic's case. Despite this warning, at one point in her testimony Scollan referred to a statement that P.B. had made while testifying:

I've talked a little bit about the child blaming themselves. I think it's really hard to describe the sense of shame that victims have about—that they've been a part of these events. You know, I've talked a little bit of how they somehow see themselves as causing the events to happen. There's a tremendous shame. I think [P.B.] mentioned the word "embarrassment" in her testimony....

At this point, the trial court interrupted Scollan and directed the jury to disregard her reference to P.B.'s testimony. Bostic

6. Bostic suggests that the fact that Scollan had established a counseling relationship with him rendered her testimony unduly prejudicial and should have precluded her from testifying, even if her testimony might otherwise have been admissible under *Rodriquez*. Bostic does not specify how, in the context of this case, Scollan's prior treatment of Bostic could realistically

have prejudiced his case. Nor does Bostic cite any authority to support his argument. While we certainly can conceive of situations in which the jury might be prejudiced by the fact that the defendant's counselor appeared as an expert witness for the prosecution, under the circumstances of the present case, we find no realistic potential for actual prejudice.

then moved for a mistrial. The court denied his motion and, instead, elected to instruct the jury that the reference to P.B. had been improper and was to be disregarded:

Ladies and gentlemen, Ms. Scollan has been called upon to give testimony that is offered for you to weigh, to provide background information to aid a jury in evaluating the situation and to teach about—to explain common characteristics that she as an expert has observed in victims in general. It is not offered nor intended to be testimony about particular instances in this case. And that's a distinction that it is important for you to understand. The witness was prob—was about to give an example by using a name that you've heard in this case. You are not to consider it in that fashion. She is talking about concepts and patterns that have been observed in victims of child sexual abuse generally.

Thus, it appears that Scollan's brief and apparently inadvertent attempt to use P.B.'s testimony as an example was immediately cut off, and the jury was twice cautioned to disregard the reference. The trial court's cautionary instructions carefully and appropriately explained the limited purpose for which Scollan's testimony was offered.

■ Prompt cautionary instructions such as those given in the present case are ordinarily presumed to cure any error stemming from the violation of a protective order. *See, e.g., Preston v. State,* 615 P.2d 594, 603–04 (Alaska 1980); *Hines v. State,* 703 P.2d 1175, 1176 (Alaska App.1985); *Roth v. State,* 626 P.2d 583, 585 (Alaska App.1981). Bostic has failed to demonstrate why his case should be deemed an exception to this rule. We find that the trial court did not abuse its discretion in denying Bostic's motion for mistrial.

■ Bostic's final challenge is to his sentence. Each of the two counts for which Bostic was convicted is a class B felony, subject to a maximum term of ten years' imprisonment. In imposing sentence,

Judge Savell found that Bostic had three prior felony convictions. Bostic was thus subject to a presumptive term of six years on each count. Judge Savell also found that the state had established five statutory aggravating factors. In imposing partially consecutive sentences totaling eleven years with one year suspended, the judge concluded that Bostic was a dangerous offender and a worst offender.

On appeal, Bostic does not challenge the sentencing court's finding of three prior felony convictions or its finding of five applicable aggravating factors. Rather, Bostic contends that two of his prior convictions were relatively old and that his conduct in committing the current offense did not involve actual violence and was not particularly aggravated. Bostic accordingly maintains that his total sentence should not have exceeded the six-year presumptive term prescribed for a third offender who has been convicted of a single class B felony. We do not find this argument to be persuasive.

Here, the sentencing court carefully considered all applicable criteria in fashioning Bostic's sentence. *See State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970). The judge found that Bostic's rehabilitation prospects were dismal, noting that Bostic has repeatedly abused his children and continues to do so, notwithstanding the extensive counseling he has received since his previous offense. The judge also found that it was necessary to isolate Bostic from his family and to express community condemnation.

These findings have ample support in the record. Having independently reviewed the entire sentencing record, we conclude that the sentence imposed below was not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).[7]

The judgment is AFFIRMED.

---

7. Bostic has also contended that his sentence is

excessive because he was still subject to an

additional term of incarceration for violating the conditions of his probation on the 1985 sexual abuse conviction. He points out that any sentence he received on the 1985 case would necessarily be consecutive to his current sentence. *See Sanders v. State*, 718 P.2d 167 (Alaska App.1986); AS 12.55.025(e). At the time of

his sentencing in the present case, however, Bostic's probation had not been revoked in the 1985 case. That case is not before us in this appeal. Under the circumstances, it would be inappropriate to evaluate Bostic's current sentence based on speculation about his sentence in the probation revocation matter.