**John Michael DAVENPORT, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–88–189.**

Court of Criminal Appeals of Oklahoma.

Jan. 30, 1991.

As Changed Feb. 13, 1991.

---

Lisbeth L. McCarty, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., A. Diane Hammons, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

JOHN MICHAEL DAVENPORT, appellant, was tried by jury for the crimes of Oral Sodomy, Crime Against Nature, (Counts I, II and IV), and Lewd Molestation, (Count III), in violation of 21 O.S.1981, §§ 886 and 1123, respectively, in the District Court of Carter County. Appellant was represented by counsel. The jury returned verdicts of guilty on all counts and set punishment at four (4) years on Count

I, six (6) years on Count II, nine (9) years on Count III and ten (10) years on Count IV. The trial court ordered the sentences to run consecutively. From these Judgments and Sentences, appellant appeals.

On April 11, 1987, Lone Grove Police Officer Larry Hoklotubbe responded to a call from Mrs. Baumstock. Mrs. Baumstock's son, Ralph, stated that M.C., his nine-year old friend, had told him that his step-dad, appellant, had been "sucking on his wienie." The Baumstocks were neighbors to M.C. and appellant. Based on this information, Officer Hoklotubbe went to appellant's house and took both appellant and M.C. to the police department for questioning.

At the police department, appellant and M.C. were taken to separate rooms. Appellant waived his *Miranda* rights and admitted to Officer Hoklotubbe that he had performed oral sodomy on M.C. and had M.C. perform oral sodomy on him. Appellant claimed that it had only happened twice, and during the second incident, he had only played with M.C. and had M.C. perform oral sodomy on him. In another room, M.C. told Officer Garland Morgan that appellant had "sucked his wienie a bunch of times."

At trial, appellant testified that he was never read his *Miranda* rights and that he had only agreed that he had done those things because the officers kept telling him that M.C. would receive help and counseling if he confessed.

■ In the first assignment of error, appellant claims that there was insufficient evidence to support the jury's finding of guilt with respect to the charge of sodomy. Specifically, appellant contends that the State failed to prove the element of penetration. When the sufficiency of the evidence presented at trial is challenged on appeal, this Court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State*, 709 P.2d 202, 203–04 (Okl.Cr.1985).

In his brief, appellant has cited numerous cases in which this Court reversed sodomy convictions due to failure of the State to prove penetration. However, as the State notes, each of those cases involved an act of cunnilingus and were reversed because the State had failed to prove penetration. In the present case, we are not dealing with cunnilingus, but rather, fellatio. Thus, penetration would be proved by evidence that appellant had put M.C.'s penis in his mouth or evidence that he had put his penis in M.C.'s mouth.

A review of the record reveals that during his confession, appellant admitted penetration. Realizing that there can be no "sucking" without penetration, we find sufficient evidence from which the jury could have found the essential elements of the crime charged beyond a reasonable doubt.

■ In the same argument, appellant claims that because M.C.'s testimony was so incredible and unworthy of belief, corroboration was required to sustain the conviction. Appellant contends that no corroboration was presented at trial. While it is true that at trial M.C. tried to recant his previous statements concerning the incidents by saying it was all a dream, it is also clear from the record that M.C. was embarrassed about the incidents and concerned about his step-father going to jail. Where there is a conflict in the testimony, it is the exclusive province of the jury to weigh the testimony and draw their conclusion therefrom, and if there is any competent evidence to support their verdict it will not be disturbed by this Court. *Pitts v. State*, 324 P.2d 546, 548 (Okl.Cr.1958). Furthermore, we find that corroboration of M.C.'s testimony was provided by appellant's own confession.

■ In his second assignment of error, appellant contends that he was improperly *Mirandized* and, therefore, his confession should have been suppressed. Specifically, appellant contends that he was never read his rights and there is contradictory evidence as to who supposedly read him his rights. Prior to trial, a hearing was held on appellant's motion to suppress the confession. At the hearing, Officer Hoklo-

tubbe testified that he read the waiver of rights to appellant, explained them and asked appellant whether he understood them, to which appellant replied that he did. Officer Hoklotubbe then asked appellant to sign the waiver form and he did. On cross-examination, Officer Hoklotubbe stated that he had read appellant his *Miranda* rights before questioning him. Virginia Davenport, appellant's wife, testified that Officer Jan Dodson had appellant sign the waiver of rights form. Mrs. Davenport further testified that Officer Hoklotubbe threatened to put appellant away if he was guilty. After a review of the record, we find that appellant was properly informed of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In the same argument, appellant claims that he was coerced by Officer Hoklotubbe into confessing to the incidents of molestation. However, the record is simply void of any evidence of coercion, and we find that appellant's confession was given freely and voluntarily.

█ In his next assignment of error, appellant contends that the trial court erred in allowing Tony Ernst, a psychologist, to give expert testimony concerning child "Accommodation Syndrome," which describes the behavioral patterns of sexually abused children. Mr. Ernst testified that the accommodation syndrome is divided into four stages (actually there are five (5) as his number (1) has two parts): (1) periods of secrecy and helplessness; (2) periods where the child accommodates the adult; (3) delayed and conflicting disclosure; and (4) retraction of the story. Mr. Ernst's testimony was general in nature. He did not give any opinion concerning M.C.'s credibility nor did he state whether M.C.'s behavior was typical of the syndrome. This was admitted due to the fact that M.C. recanted his first or prior story and to explain to the jury why a child reacts this way.

█ Before such expert testimony could be admitted, it must be proven to the satisfaction of the court that the syndrome is generally accepted in the medical community as reliable. *Driskell v. State*, 659 P.2d 343 (Okl.Cr.1983). The trial court held an in camera hearing to determine this particular test. Although objected to, the testimony of the expert was introduced at the time of trial. It is impossible for us to tell from the transcript what happened at the in camera hearing because it was not recorded. We can only assume that the syndrome was determined by the court to be accepted as reliable. We again admonish the bench and bar to have all side bar or in camera hearings recorded on the record.

The expert testified that the syndrome was generally accepted and his answer to the propounded question was not objected to and, therefore, must stand as proper evidence. The expert properly testified and only explained what the syndrome was so that a jury could draw their own conclusion and did not testify that the child was a subject of the syndrome. We feel that the court did an excellent job of seeing that the prosecutor properly questioned the expert and restricted the expert's testimony to those matters which were proper.

█ This Court has the right to make an independent search of appropriate medical and legal doctrines to determine if the syndrome is generally accepted and meets the proper test. From our research, we find that it is a generally accepted doctrine. A complete in-depth discussion of the accommodation syndrome from the legal as well as medical perspective (written by one lawyer, two doctors and two psychologists) is found in a recent Law Review article. *Expert testimony in Child Sexual Abuse Litigation*, 68 Nebraska Law Review 1 (1989).

The syndrome was first assembled through the research of Roland C. Summit, M.D., whose specialty is in community consultation to diverse clinical and para-clinical sexual abuse programs. The research is entitled "The Child Sexual Abuse Accommodation Syndrome", *Child Abuse and Neglect*, Vol. 7, pp. 177–193, (1983). The doctor starts with secrecy (1) and quotes from individual cases such as "This is our secret; nobody else will understand", "don't tell anybody", "nobody will believe you", "don't tell your mother, she will hate you, she will kill you, kill me, send you away,

etc." The doctor ends with the "retraction" stage (5). This stage explains why a child recants. His findings show that the child is often abandoned by a father, the father calls the child a liar, the mother then does not believe the child, further, the mother suffers from hysteria and rage, the family is fragmented and the child may be placed in custody. He goes on to show that the father or stepfather is threatened with disgrace and imprisonment and that the child is blamed for "the whole mess". The mother starts on the child by statements such as "why do you insist on telling those awful stories about father?", "If we send him to prison, we won't be a family anymore." Doctor Summit's research has been widely quoted by other experts in the field. A sample of this would be from another article entitled "Breaking Secrecy", *Psychiatric Clinics of North America*, Vols. 12(2), 337–349, (1989). Through our independent research, we find the syndrome to be valid and without medical dissent.

Numerous courts have allowed an expert to testify in rebuttal to explain delay in reporting as well as why a child recants. As to delay, *see Bostic v. State*, 772 P.2d 1089 (Alaska Ct.App.1989); *People v. Bowker*, 203 Cal.App.3d 385, 249 Cal.Rptr. 886 (1988); *People v. Hampton*, 746 P.2d 947 (Colo.1987); *Wheat v. State*, 527 A.2d 269 (Del.1987); *Griego v. State*, 761 P.2d 973 (Wyo.1988). As to recanting, *see State v. Lindsey*, 149 Ariz. 472, 720 P.2d 73 (1986); *People v. Luna*, 204 Cal.App.3d 726, 250 Cal.Rptr. 878 (1988); *People v. Bowker, supra; Wheat v. State, supra; State v. Middleton*, 294 Or. 427, 657 P.2d 1215 (1983); *Commonwealth v. Baldwin*, 348 Pa.Super. 368, 502 A.2d 253 (1985); *State v. Madison*, 53 Wash.App. 754, 770 P.2d 662 (1989).

Furthermore, many jurisdictions have allowed expert testimony describing the reactions of typical child victims of sexual abuse if it will assist the jury in deciding whether or not the alleged abuse occurred. *See People v. Deninger*, 772 P.2d 674, 676 (Colo.App.1989); *State v. Reser*, 244 Kan. 306, 767 P.2d 1277, 1279 (1989); *Griego v. State*, 761 P.2d 973, 979 (Wyo.1988); *Town-*send *v. State*, 103 Nev. 113, 734 P.2d 705, 708 (1987); *State v. Lawrence*, 112 Idaho 149, 730 P.2d 1069, 1074 (App.1986); *State v. Moran*, 151 Ariz. 378, 728 P.2d 248, 251 (1986); *State v. Lindsey*, 149 Ariz. 472, 720 P.2d 73, 75 (1986); *State v. Myers*, 359 N.W.2d 604, 609 (Minn.1984); and *State v. Middleton*, 294 Or. 427, 657 P.2d 1215, 1221 (1983). Finally, the fact that such evidence is incidentally corroborative does not render it inadmissible, since most expert testimony, in and of itself, tends to show that another witness either is or is not telling the truth. *See People v. Deninger*, 772 P.2d at 676. *See also, People v. Koon*, 724 P.2d 1367, 1370 (Colo.App.1986) and *State v. Myers*, 359 N.W.2d at 609. The cases have recognized that jurors, most of whom are unfamiliar with the behavioral sciences, may benefit from expert testimony explaining behavior they might otherwise attribute to inaccuracy or prevarication. *See State v. Moran*, 728 P.2d at 251.

We also find that such expert testimony augments the normal experience of jurors and helps them draw proper conclusions concerning the particular behavior of a victim in a particular case. However, expert testimony may not be admitted to tell the jury who is correct or incorrect, who is lying and who is telling the truth. *See Lawrence v. State*, 796 P.2d 1176 (Okl.Cr. 1990). Once the emotional antecedents underlying the victim's behavior are explained, the jury needs nothing further from the expert. *State v. Moran*, 728 P.2d at 252. Thus, because Mr. Ernst's testimony concerned only the typical behavior patterns of child victims of sexual abuse, we find that its admission under 12 O.S.1981, § 2702 was not error.

The syndrome may only be used as a form of rebuttal to explain why the child has retracted or recanted a statement and may not be put on as direct evidence until the child has testified and recanted or retracted. The court may allow the evidence of the syndrome during the state's case-in-chief but only after the child testifies and recants or to explain a long delay in reporting the sexual abuse.

■ Therefore, this Court accepts the accommodation syndrome as reliable scientific evidence provided that such syndrome is testified to by an expert that is (1) subject to cross-examination, (2) that the expert testifies as to the basis for such testimony, (the general acceptance in the scientific community and his knowledge of the syndrome), and (3) that the expert testifies only as to the background and nature of the syndrome and does not state an opinion as to whether or not the particular child suffers from the syndrome but leaves that to the jury.

■ Appellant next contends that the statements of M.C. did not bear sufficient indicia of reliability and should have been suppressed. A hearing concerning the admissibility of M.C.'s statements was conducted pursuant to 12 O.S.1984, § 2803.1(A)(1). At the hearing, the trial court found that the statements contained sufficient indicia of reliability and overruled appellant's motion. A review of the record reveals that M.C.'s statements remained consistent and we find no error in the trial court's ruling.

■ Appellant next argues that prosecutorial misconduct deprived him of a fair trial. Specifically, appellant asserts that the prosecutor asked improper questions of the jurors during voir dire, asked an improper leading question of the expert witness and made improper closing argument. We have reviewed the comments cited by appellant, and while we do not condone the comments, we find that the trial court's admonishments cured any error. *Horton v. State,* 728 P.2d 1376, 1377 (Okl.Cr.1986).

■ Appellant claims he was denied effective assistance of counsel at trial due to two inquiries made by defense counsel during jury voir dire. The first question concerned whether the jurors would have any problem if the appellant chose not to testify, and the second question concerned the range of punishment the jury would consider. Initially, we note that appellant did testify, rendering any error by the question harmless. Secondly, the trial court properly admonished the jury concerning defense counsel's questioning about punishment.

We have reviewed the record and find that trial counsel's performance was very competent and professional and did not fall below the level of effective assistance of counsel. *See Strickland ·v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In his next assignment of error, appellant contends that the trial court improperly limited voir dire of the jury. We have reviewed the record and find this claim to be patently frivolous. No objection was entered by either party to the trial court's comments and we find no abuse of discretion. *See Banks v. State,* 701 P.2d 418, 423 (Okl.Cr.1985).

Appellant finally asserts that his sentences are excessive. However, appellant's sentences are within statutory limits, and we cannot say that they shock our conscience. *Huntley v. State,* 750 P.2d 1134, 1136 (Okl.Cr.1988).

The Judgments and Sentences are AFFIRMED.

LANE, P.J., LUMPKIN, V.P.J., and BRETT, J., concur. ·

PARKS, J., dissents.

PARKS, Presiding Judge, dissenting:

The threshold test for determining the admissibility of testimony by a qualified expert is whether the scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue. 12 O.S.1981, § 2702. However, the determination does not end there. Before scientific evidence is admissible, there must be proof that the reliability of the tests used has gained general acceptance and recognition in the concerned scientific community. *Rawlings v. State,* 740 P.2d 153, 161 (Okl. Cr.1987); *Smith v. State,* 656 P.2d 277, 281 (Okl.Cr.1982).

The expert testimony in the case at bar created the type of situation this Court warned against in *Driskell v. State,* 659 P.2d 343 (Okl.Cr.1983):

We acknowledge, however, that not all scientific evidence should be admitted in

a criminal trial. Scientific evidence "must be sufficiently established to have gained general acceptance in a particular field ..." *Frye v. United States*, 54 App.D.C. 46, 293 F. 1013 (1923). Expert opinion without a generally accepted scientific basis may be given undue weight by the jury, thereby denying the defendant a fair trial.

*Driskell*, 659 P.2d at 356.

There must be a proper foundation laid for all evidence which is admitted at trial. The proponent of such evidence has the burden of showing the underlying scientific basis and reliability of an expert's testimony. *Marshall v. State*, 620 P.2d 443, 445 (Okl.Cr.1980). With the exception of the self-serving statement introduced by Mr. Ernst indicating that the so called syndrome is generally recognized in the scientific community (Tr. 313), the record is devoid of any data that the trial judge could have relied upon to reach an informed conclusion. Based on this record, the prosecution blatantly failed to shoulder its burden of proving that this "syndrome" is generally accepted in the scientific community.

Several convictions for sex crimes against children have been reversed by the Supreme Court of Kentucky because the prosecution failed to establish that the child sexual abuse accommodation syndrome (CSAAS) is a generally accepted medical concept. *See Mitchell v. Commonwealth*, 777 S.W.2d 930 (Ky.1989); *Hester v. Commonwealth*, 734 S.W.2d 457 (Ky.1987); *Lantrip v. Commonwealth*, 713 S.W.2d 816 (Ky.1986); *Bussey v. Commonwealth*, 697 S.W.2d 139 (Ky.1985). Several California cases have held that the introduction of evidence concerning CSAAS was error for similar reasons. *See Seering v. Dept. of Social Services*, 194 Cal.App.3d 298, 239 Cal.Rptr. 422 (1987); *In re Sara M.*, 194 Cal.App.3d 585, 239 Cal.Rptr. 605 (1987).

I believe that it would be a grave mistake for this Court to give credence to the CSAAS syndrome without first determining that the syndrome is reliable and worthy of our trust. Based upon this record, I would find that the trial court abused its discretion in allowing the testimony relating to CSAAS.

Furthermore, the record reveals that the prosecutor was permitted to distribute copies of the victim's statement and appellant's confession (State's Exhibits 3 and 4, respectively) to the jury. Using these copies, the jurors were permitted to follow along as the tape recorded statements were introduced. Defense counsel strenuously objected to this procedure on the grounds that the evidence was cumulative. I agree. Although the victim's statements to the police and appellant's confession were clearly relevant, the manner in which the evidence was presented was substantially outweighed by the danger of needless presentation of cumulative evidence. 12 O.S. 1981, § 2403.

For the foregoing reasons, I would reverse and remand this cause for a new trial.