730 P.2d 1069

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Vicki LAWRENCE, a/k/a Vicki Dillon, Defendant-Appellant.**

No. 15454.

Court of Appeals of Idaho.

Dec. 31, 1986.
Petition for Review Denied
March 30, 1987.

Van G. Bishop, Nampa, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman (argued), Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

Vicki Lawrence stands convicted by a jury of violating I.C. § 18–6607, the statute proscribing lewd and lascivious conduct with minors. On appeal she raises a potpourri of issues. She contends, first, that

the district court should have ordered a new trial after a state's witness recanted testimony given against her. Second, she argues that her trial was tainted (a) by admission of expert testimony concerning the behavior of children in reporting sexual abuse, and (b) by exclusion of evidence showing her lack of complicity in other, uncharged incidents of abuse. Finally, she asserts that her sentences, described later in this opinion, are procedurally defective and impermissibly penalize her for adhering to a claim of innocence. We find no error in the district court's evidentiary rulings or in the sentences imposed. However, for reasons to which we now turn, we vacate the judge's order denying a new trial and we remand the case for reconsideration on that issue.

## I. Recanted Testimony

The prosecutor's information accused the appellant of a variety of acts against children. She had been caring for three of the alleged victims while their mother was in the hospital. A fourth alleged victim was the appellant's own daughter. Count I charged the appellant with aiding and abetting her husband, Dale Eugene Lawrence, in an attempt to force an eleven-year-old girl to make oral contact with the husband's exposed penis. The witnesses to this alleged incident were the victim and the husband. Count II alleged that the appellant had molested a six-year-old girl by rubbing and scratching her vagina while she was in a bathtub. Again, the witnesses were the victim and the husband, who claimed to have observed the event. Count III charged the appellant with compelling a nine-year-old boy to disrobe and to engage in sexual contact with the appellant's minor daughter. The state's witnesses were the boy and the husband, who claimed to have overheard the event from an adjacent room. The appellant's daughter denied that the event occurred. The appellant herself emphatically denied all of the incidents alleged in the prosecutor's information.[1] The jury evidently was persuaded otherwise.

1. The prosecutor initially charged both the appellant and her husband with lewd conduct.

Several months after the trial, the husband signed an affidavit asserting that his trial testimony was "completely false in that he had no personal knowledge as to the statements he made...." He also averred that the mother whose three children allegedly had been victimized "explained to him what his testimony needed to consist of in order that it conform to the testimony of the ... alleged victims." Relying upon this affidavit, the appellant filed a motion for a new trial. An evidentiary hearing was conducted. The state endeavored at the hearing to show that the husband lied when recanting his prior testimony. The victims' mother denied that she had influenced the testimony. Moreover, as noted during the trial itself, the husband had a long string of criminal convictions, undermining his credibility. At the close of the hearing, the district judge ruled as follows:

*I think probably the real central issue in this case, and one I have been trying to zero in on or put the most deliberation into is number C on this brief that you just handed to the Court. That is, whether or not, if the Court granted a new trial, it would probably produce an acquittal.*

Taking into consideration the trial itself, the entire record, the testimony that the Court received today, and the exhibits presented in evidence, I am confident in my mind it would not produce an acquittal. If there had only been one child testify there may be a stronger argument, but I think with the corroboration that exists, the testimony of the three witnesses, and other matters that the jury had before it, the result would have likely been the same.

*As far as Mr. Lawrence testifying as a witness for the state, I think his credibility is null and void anyway.* I am completely confident at this point in time

if he did change and testify for the defendant, that the jury would be advised of the switch back and forth in his testimony, and that it would receive little or no weight and would not be influential in the jury's decision.

My own evaluation of the testimony at the time of trial, I placed little or no credence on his testimony. I advised the appellant at the time of sentencing that I felt she was guilty, even though I knew she was contending she was innocent at that point. *I just don't feel anyone at any time has placed any credence or real weight on the testimony of Mr. Lawrence. I believe that the harmless rule [sic] is particularly applicable in this case.* [Emphasis added.]

The judge's remarks, referring on one hand to the probability of an acquittal and on the other hand to a standard of harmlessness, illustrate two different approaches to the problem of recanted testimony. One approach has been to treat the recantation as a form of newly discovered evidence. When a new trial is sought upon such evidence, the moving party must satisfy what has come to be known as the "Berry" test. This multi-part test, named after the case of *Berry v. State*, 10 Ga. 511 (1851), includes a requirement that the new evidence probably would produce a different result. *Berry* has been adopted in substance by most state and federal courts. 3 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 557 (2d ed. 1982) (hereinafter WRIGHT). It was approved by our Supreme Court in *State v. Drapeau*, 97 Idaho 685, 551 P.2d 972 (1976).

A second approach has been to treat recanted testimony as a problem distinct from newly discovered evidence. Perjured testimony affects the integrity of the judicial process in a way that overlooked evidence does not. WRIGHT § 557.1. More-

---

The information included a count directed solely against the husband. He entered a negotiated plea of guilty to that count and to other, unrelated charges. Consequently, at trial only the three counts involving the appellant were at issue. The parties and the district judge re-

ferred to these charges as Counts I, II and III, described above. On the eve of trial, the appellant divorced her husband. However, the term "husband" is used in our opinion for ease of reference.

over, while a rigorous standard for obtaining a second trial upon new evidence may be justified as an incentive for the parties to marshal evidence and to present it at the first trial, the parties need no such incentive to combat perjury. The seminal decision establishing a distinct test for recanted testimony is *Larrison v. United States*, 24 F.2d 82 (7th Cir.1928). There, as in the present case, a government witness announced after trial that he had given false testimony. The *Larrison* court held that a new trial should be granted when (a) "[t]he court is reasonably well satisfied that the testimony given by a material witness is false," (b) "[t]hat without it the jury *might* have reached a different conclusion," and (c) "[t]hat the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial." (Emphasis original.) [2]

Those courts which fail to discern any functional difference between the recantation of trial testimony and the discovery of new evidence after trial have applied the *Berry* test in both situations. *E.g., United States v. Krasny*, 607 F.2d 840 (9th Cir. 1979), *cert. denied*, 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 775 (1980). However, most courts now apply the *Larrison* test to recanted testimony. *E.g., United States v. Stofsky*, 527 F.2d 237 (2d Cir.1975), *cert. denied*, 429 U.S. 819, 97 S.Ct. 65, 66, 50 L.Ed.2d 80 (1976); *see generally* WRIGHT § 557.1.

In Idaho, the relationship between *Berry* and *Larrison* has not been explored thoroughly. However, our Supreme Court, without mentioning *Berry* or its adoption in *Drapeau*, has cited *Larrison* with approval. In *State v. Scroggins*, 110 Idaho 380, 716 P.2d 1152 (1986), the Supreme Court explicitly noted *Larrison's* three elements.

The court then reformulated *Larrison* as follows:

> [U]nder the holding of *Larrison*, it would seem that in appropriate circumstances, where a defendant submits an affidavit by a government witness in which the witness recants his testimony and specifies in what ways he dishonestly testified and in what ways he would, if given the opportunity to testify again, change that testimony and where a defendant makes a showing that such changed testimony *may be material* to a finding of his guilt or innocence, a new trial should be held.

110 Idaho at 385, 716 P.2d at 1157 (emphasis added).

The principal difference between *Berry* and *Larrison* is that the former precludes a new trial unless a different result is "probable," while the latter requires only that the recanted testimony appear to be "material." But this difference may not be as profound as it seems. Testimony is material if it reasonably could have affected the outcome. Conversely, the probability of a different result in a criminal case turns narrowly on whether the new evidence is likely to raise a reasonable doubt of the defendant's guilt. *State v. Ames*, 112 Idaho 144, 730 P.2d 1064 (Ct.App. 1986). Indeed, the United States Supreme Court recently has stated that a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 841 (1985); *see also Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). The historic gap between *Berry* and *Larrison* may be closing. Nevertheless, to the extent that a gap still exists, *Larrison*—as interpreted in *Scroggins* —provides the standard for evaluating recanted testimony in Idaho.

---

**2.** The third element of *Larrison* may invite misunderstanding if given a superficial reading. It does not require that the falsity of the recanted testimony be wholly unknown at trial. Rather, it requires that a defendant be diligent in determining whether false testimony will be presented and in offering any available evidence to rebut it. *Larrison*, 24 F.2d at 87. *See also United States v. Robinson*, 585 F.2d 274 (7th Cir.1978), *cert. denied*, 441 U.S. 947, 99 S.Ct. 2171, 60 L.Ed.2d 1051 (1979). A defendant cannot knowingly let false testimony enter the record unchallenged, and then seek a "second bite at the apple" if convicted.

■ The district judge in the present case did not have the benefit of *Scroggins* when he ruled on the appellant's motion for a new trial. This presumably accounts for the judge's reference to the probability of an acquittal as the "central" issue framed by the motion. The judge, albeit through no fault of his own, misidentified the test by which the motion was to be decided. The proper test is not whether the recantation of testimony *probably would* produce an acquittal; it is whether the recantation *reasonably could* affect the outcome.

■ When a judge exercises a discretionary function, such as ruling on a motion for a new trial, and in doing so he applies an incorrect legal standard, the proper appellate response ordinarily is to vacate the ruling and to remand the case for reconsideration. *See generally Kunzler v. Kunzler,* 109 Idaho 350, 707 P.2d 461 (Ct.App. 1985). But here, as we have mentioned, the judge did not limit his remarks to the probability of an acquittal. He also opined that the husband's credibility was "null and void," and that the recanted testimony had been "harmless." Consequently, we have considered the possibility that these remarks might be deemed to satisfy the *Larrison-Scroggins* test of materiality.

■ We think such an approach would be tenuous for several reasons. It strikes us as unwise for an appellate court to place an interpretive gloss upon a judge's ruling and then to apply the deferential "abuse of discretion" standard to its own construction of the ruling. In addition, it is one thing to say, as the judge did, that a jury in a second trial would give little or no weight to the husband's changed testimony. It is quite another thing to say that the jury in the first trial, unaware of the eventual recantation, gave little or no weight to the original testimony. We respect the district court's seasoned judgment and we acknowledge the judge's proximity to the events. But we are mindful that the husband was the state's lead witness on the alleged incidents of sexual abuse. He was the first person to testify about these events and he was the only person to testi-

fy about all of the incidents charged. If his testimony were set aside, the case would be narrowed to a credibility contest between three children—each of whom claimed that a single incident occurred—and the appellant, who, along with her daughter, testified that none of the alleged events occurred. Finally, we do not see how the husband's credibility at trial can be denigrated without damaging part of the state's case. In Count I, it will be recalled, the appellant was charged with aiding and abetting an attempt to produce oral-genital contact between the husband and a child. If no credibility is ascribed to the husband's testimony that he was present and that such an attempt occurred, the state's proof is severely impaired.

In sum, we cannot say that the district judge's remarks satisfy the *Larrison-Scroggins* inquiry. The materiality of the husband's recanted testimony is a close question. Accordingly, we hold that the judge's denial of the motion for new trial must be vacated and the appellant's motion must be reconsidered in light of the *Larrison-Scroggins* standard.

Regardless of how the judge rules on remand, it is necessary for us to consider the remaining issues presented on appeal. If the judge grants the motion in whole or in part, the admission and exclusion of evidence, or the propriety of sentences, may be challenged again. Conversely, if the motion is denied, the judgment of conviction will stand unless we find a reason, among the other issues presented, to set the judgment aside. We now turn to those other issues.

## II. Admission and Exclusion of Evidence

The sexual abuse charged in this case allegedly occurred during the summer of 1981. The children did not report the incidents until 1982. In 1983, other sexual misconduct by the husband, outside the scope of this case, allegedly took place. The district court allowed the state to present expert testimony explaining why the reporting of sexual abuse might have been delayed. The court disallowed any testimony showing that the appellant had

*not* participated in the 1983 incidents. The appellant now contends that the court erred in both rulings.

### A

■ The issue of delayed reporting was raised by defense counsel while cross-examining the boy involved in the incident charged by Count III:

Q You could have told your mom about this incident, could you not have?

A Yeah.

Q Did you ever tell your mom?

A Yeah.

Q When was this?

A Maybe about two weeks or three weeks after she [got out of the hospital].

Q After [the appellant] left the house?

A Yeah, after she moved out.

The state subsequently offered expert testimony by a social worker knowledgeable in the field of child sexual abuse. The witness proposed to testify that it is not unusual for victims to delay reporting incidents of abuse. The appellant objected, arguing that such evidence was not reliable and that the jury might construe the testimony to mean that the children in question actually had been abused. The district judge, after reviewing case law provided by counsel, ruled as follows:

In the limited time I have had to look over these cases, it is my opinion [that the time of reporting] ... is in issue.... It is also the opinion of the Court this is an area not typically within the knowledge of lay people, and this may be helpful to the jury. However, it is my understanding in permitting this that the witness will not be determining whether these children were, in fact, abused, so that the credibility of the children remains an issue for the jury.

The admission of expert testimony generally falls within the discretion of the trial court. *See State v. Hoisington*, 104 Idaho 153, 657 P.2d 17 (1983); *State v. Crawford*, 110 Idaho 577, 716 P.2d 1349 (Ct.App.1986). Unless discretion is abused, we will not

disturb its exercise. *Brown v. Jerry's Welding & Construction Co.*, 104 Idaho 893, 665 P.2d 657 (1983). Our Supreme Court has provided guidelines for such discretion. "A person possessing skill or knowledge qualifying him as an expert is generally allowed to express his opinion as to matters in issue when an opinion would be of appreciable help to the jury in finding the facts." *Stoddard v. Nelson*, 99 Idaho 293, 581 P.2d 339 (1978); *see also* I.R.E. 702 (expert testimony admissible where it will "assist the trier of fact").

Here, as we have seen, appellant's counsel had attempted to impeach the credibility of a child witness by emphasizing his failure to report promptly an incident of sexual abuse. A child may have difficulty articulating the reasons for his behavior. The state presented the expert testimony to show that victims of sexual abuse sometimes delay reporting such incidents due to feelings of fear or guilt. The testimony was narrowly circumscribed. The expert offered no opinion as to whether the children in this case had been abused. To the contrary, the expert openly acknowledged that he had not examined the children. His testimony was based on twenty years of personal experience as an administrator and therapist for a county mental health program. During his career, he had been involved with three to four hundred victims of child sexual abuse. As the district judge properly noted, this experience gave the expert information not within the common knowledge of lay persons. We hold that the trial court's admission of the expert testimony was not an abuse of discretion. Other courts which have considered the use of expert testimony to explain delays in reporting sexual abuse have arrived at similar conclusions. *See People v. Benjamin R*, 103 A.D.2d 663, 481 N.Y.S.2d 827 (N.Y. App.Div.1984); *Smith v. State*, 100 Nev. 570, 688 P.2d 326 (Nev.1984); *State v. Petrich*, 101 Wash.2d 566, 683 P.2d 173 (Wash. 1984).

We emphasize the limited purpose for which the expert testimony was offered in this case. Some courts have permitted ex-

perts to testify more broadly about the typical characteristics of abused children, to compare those characteristics with those of children in the case at hand, and to state an opinion as to whether the children were in fact the victims of abuse. *See, e.g., State v. Kim,* 64 Hawaii 598, 645 P.2d 1330 (Haw.1982); *State v. Myers,* 359 N.W.2d 604 (Minn.1984). However, the propriety of such broad testimony is a matter of hot dispute. Note, *The Unreliability of Expert Testimony on the Typical Characteristics of Sexual Abuse Victims,* 74 GEO. L.J. 429 (1985). *See also State v. Haseltine,* 120 Wis.2d 92, 352 N.W.2d 673 (Wis. App.1984) (disallowing expert testimony on victim's credibility, but stating that expert testimony may be admissible to explain particular behavior such as delay in reporting abuse). Our Supreme Court has noted, but has voiced no opinion concerning, this controversy. *See State v. Snapp,* 110 Idaho 269, 715 P.2d 939 (1986). We, too, refrain from deciding whether expert testimony may be used more broadly than for the limited purpose identified in this case.

B

■ The appellant offered to prove that on two occasions in 1983, she found her husband committing lewd acts with a minor. In both instances the husband desisted in the appellant's presence. Counsel offered the testimony "to show that my client did not encourage those incidents, or did not aid and abet them. Whatever the wording, we had nothing to do with these lewd and lascivious acts." The trial judge excluded the testimony on the grounds that these incidents, which occurred approximately one year after the offenses charged, were remote, were irrelevant to the issues, and would confuse the jury.

In Idaho, a criminal defendant has long been entitled to offer evidence of good character to show that he did not commit the crime of which he is charged. *State v. Dobbins,* 102 Idaho 706, 639 P.2d 4 (1981). Before the adoption of the Idaho Rules of Evidence, which were not yet in effect when this case was tried, such proof of

character was limited to the defendant's reputation in the community. *Id.* The new rules permit a defendant to prove good character either by reputation or by opinion testimony. However, proof of good character through specific instances of good conduct is impermissible under both the rules and general case law. I.R.E. 404(a)(1) and 405(a); E. CLEARY, McCORMICK ON EVIDENCE § 191 (3d ed. 1984). The purpose of this prohibition is "to avoid innumerable collateral issues which, if it were attempted to prove character by direct testimony, would complicate and confuse the trial, distract the minds of jurymen and befog the chief issues in the litigation." *Michelson v. United States,* 335 U.S. 469, 478, 69 S.Ct. 213, 219, 93 L.Ed. 168 (1948).

■ However, there are exceptions. Evidence of uncharged bad acts is admissible if relevant to a material issue such as motive, intent, mistake or accident, common scheme or plan, and identity. *State v. Wrenn,* 99 Idaho 506, 584 P.2d 1231 (1978); *State v. Roach,* 109 Idaho 973, 712 P.2d 674 (Ct.App.1985). *See also* I.R.E. 404(b). By parity of reasoning, it would appear that proof of other good acts, like bad acts, should be admitted if it is relevant to a material issue. Where evidence of good acts is offered, the trial judge need not concern himself with the danger of unfair prejudice to the defendant; but he still may exclude the evidence if its probative value is substantially outweighed by such dangers as confusing the issues or misleading the jury.

Here, we think little probative value could have been ascribed to the "good acts" claimed by the appellant. They were not entirely her own acts; indeed, they could hardly be classified as "acts" at all. They consisted merely of the husband's cessation of abuse when he became aware that the appellant was present. There was no offer to prove that the appellant actively interfered with, or expressed disapproval of, her husband's conduct. The most that can be said of the evidence is that it might have cast some doubt on whether the appel-

lant would have engaged in the sexual abuse charged by the prosecutor if she did not encourage or participate in abuse on other occasions. However, any such probative value was attenuated by remoteness in time, a year having elapsed between the incidents charged and the incidents sought to be proved. Moreover, to the extent that the evidence was offered to show that the appellant was not the kind of person who would encourage or participate in sexual abuse, it violated the general rule proscribing character evidence based upon specific acts. *Cf. United States v. Benedetto*, 571 F.2d 1246 (2d Cir.1978) (defendant charged with soliciting bribes not permitted to show lack of bribes in other circumstances).

■ The appellant argues that the testimony could have been admitted under an exception to the general rule because it showed that she "did not enter into any common scheme or design with lewd and lascivious intent." The "common scheme or plan" exception is often misinterpreted. *See* 22 WRIGHT & GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5244 (1978) (hereinafter WRIGHT & GRAHAM). A plan or design ordinarily is not an element of a criminal offense. It is not an element of lewd conduct. Therefore, evidence showing the existence or absence of a plan would be irrelevant unless related to some other material issue in the case. *Id.* For example, a plan might be relevant to show motive to commit a crime, the identity of the actor, or his intention. McCORMICK § 190. However, this exception applies only where it is the existence of the plan itself, rather than any general inferences about the character of the defendant, which is probative on the issue in question. WRIGHT & GRAHAM, *supra.* This distinction, although sometimes elusive, is important in order to preserve the integrity of the prohibition against specific act character evidence.

■ Here, the appellant urges that the testimony was relevant to an issue of intent. Concededly, lewd conduct is a specific in-

tent crime, requiring the prosecution to prove intent beyond a reasonable doubt. However, such intent was not genuinely put at issue in this case. The appellant did not contend that she had committed the alleged acts accidently or with innocent intent. To the contrary, the appellant testified that the incidents never occurred. We conclude that the district judge did not err in excluding the evidence proffered by the appellant.[3]

### III. Sentencing Issues

The appellant argues that two errors were committed at sentencing. First, she asserts that she was denied her sixth amendment right to counsel. The record discloses that defense counsel was present at sentencing, examined witnesses, and vigorously argued for a lenient sentence. The district judge then orally pronounced concurrent and indeterminate sentences of four years on Counts I and II. He also imposed a consecutive indeterminate term of ten years on Count III, but tempered it by retaining jurisdiction for 120 days, presumably to commence when the four-year sentences were discharged. Several hours after the sentences had been pronounced, the appellant was brought back before the court. The district judge said he had been advised that he might have mistakenly referred to the sentence on Count III as concurrent rather than consecutive. The court reiterated that the sentence would be consecutive. Counsel was not present, but the court noted that counsel had been contacted and had spoken to the appellant. There was no objection to the procedure employed by the court for clarifying the sentence. Nevertheless, the appellant now argues that counsel's absence rendered the clarification defective.

■ Sentencing is a critical stage of a criminal proceeding, at which a defendant is entitled to counsel. *See Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); *State v. Brown*, 98 Idaho 209, 560

---

**3.** We note that the state attempted, on several occasions during the course of the trial, to introduce evidence relating to uncharged sexual misconduct of the appellant. The district judge, acting consistently, excluded this evidence as well.

P.2d 880 (1977). However, the appellant in this case received the able assistance of counsel at sentencing. We are not convinced that the subsequent appearance and clarification constituted a "critical stage" in the proceedings. In any event, the appellant has made no showing of prejudice in this case. Although the district judge was concerned that he may have unintentionally imposed a concurrent sentence, the reporter's transcript indicates in two separate passages that the judge actually pronounced a consecutive sentence as intended. In a non-capital case, the absence of counsel at sentencing does not raise a presumption of prejudice. *See United States v. Butler,* 763 F.2d 11 (1st Cir.1985); *United States v. Carroll,* 510 F.2d 507 (2nd Cir.1975), *cert. denied,* 426 U.S. 923, 96 S.Ct. 2633, 49 L.Ed.2d 378 (1976); *Bryant v. Moore,* 438 F.2d 1230 (1st Cir.1971); *Vitoratos v. Maxwell,* 351 F.2d 217 (6th Cir. 1965), *cert. denied,* 383 U.S. 105, 86 S.Ct. 718, 15 L.Ed.2d 618 (1966). Therefore, if the absence of counsel was error at all, it was harmless.[4]

The appellant's second attack upon the sentences is that the district judge impermissibly took into consideration her refusal to acknowledge guilt after the trial was concluded. It is, of course, improper for a court to penalize a defendant merely because she exercises her right to put the government to its proof. *See United States v. Araujo,* 539 F.2d 287 (2d Cir.), *cert. denied,* 429 U.S. 983, 97 S.Ct. 498, 50 L.Ed.2d 593 (1976); *United States v. Duffy,* 479 F.2d 1038 (2d Cir.), *cert. denied,* 414 U.S. 978, 94 S.Ct. 299, 38 L.Ed.2d 221 (1973). Further, the defendant retains the right to appeal the judgment of conviction. A court should not coerce a defendant into sacrificing the right to assert innocence by threatening a more severe sentence. *Thomas v. United States,* 368 F.2d 941 (5th Cir.1966).

On the other hand, a sentencing judge must consider the primary goal of protection of society and the related goals of deterrence, rehabilitation and retribution when imposing sentence. *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). Many courts have held that an acknowledgement of guilt is a critical first step toward rehabilitation. *United States v. Hull,* 792 F.2d 941 (9th Cir.1986); *United States v. Floyd,* 496 F.2d 982 (2d Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 654, 42 L.Ed.2d 664 (1974); *Gollaher v. United States,* 419 F.2d 520 (9th Cir.), *cert. denied,* 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424 (1969). Here, the appellant's plea for leniency rested uneasily on two arguably inconsistent grounds—her rehabilitative progress and her innocence. She sought probation and a program of therapy. However, the psychologist who examined the appellant concluded that because of her vehement denial of any wrongdoing, a treatment program would not be productive. Although a refusal to admit guilt usually should not be given much weight, the district judge in this case could not wholly ignore the issue as far as rehabilitation was concerned.

The district judge did not rely solely on the appellant's refusal to admit guilt when he imposed sentence. Neither has the appellant contended that the sentences were excessive for any other reason. The judge properly emphasized the harmful effect of sexual abuse on children and a danger that the appellant, if placed immediately on probation, would continue her pattern of child sexual abuse. Although the maximum sentence for lewd and lascivious conduct is life imprisonment, the court imposed what amounts to a fourteen-year indeterminate sentence, with an opportunity to earn probation when the four-year sentences are discharged and the 120–day evaluation is completed. These sentences are appropri-

---

4. Our Supreme Court has interpreted I.C.R. 43(a) and I.C. § 19–2503 to require the presence of defense counsel when sentence is pronounced. If an invalid sentence has been struck down, the defendant and counsel must be present for imposition of a new sentence. *See*

*State v. Creech,* 105 Idaho 362, 365 n. 1, 670 P.2d 463, 466 n. 1 (1983). Here, the district judge imposed a valid sentence in the presence of counsel. As we have noted, the subsequent clarification did not change that valid sentence.

ate for a defendant with unclear rehabilitative prospects. We find no "penalty" imposed for the appellant's assertion of innocence. The sentences will not be disturbed, unless, of course, a new trial is granted on remand, causing the judgment of conviction to be set aside.

In summary, we uphold the trial court's evidentiary rulings and the sentences. Upon these issues the judgment of conviction is conditionally affirmed. However, we vacate the court's order denying a new trial in light of recanted testimony. We remand the case for reconsideration of the appellant's motion, applying the *Larrison-Scroggins* standard.

WALTERS, C.J., and SWANSTROM, J., concur.