809 P.2d 506

**Scott D. BEAN, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 17221.**

Court of Appeals of Idaho.

Jan. 11, 1990.

Review Granted March 22, 1990.

Marvin R. Stucki, Idaho Falls, for petitioner-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., Boise, for respondent.

BURNETT, Judge.

This is a post-conviction relief case. Scott Bean is serving a fixed (determinate) life term of imprisonment for first degree murder. He seeks relief because a codefendant has recanted testimony adverse to him. The issue is whether the recantation "requires vacation of the conviction or sentence in the interest of justice...." I.C. § 19–4901(a)(4). The district court, focusing primarily upon the conviction, denied relief. Today, for reasons explained below, we uphold the district court's ruling as to the conviction, but we remand the case for additional consideration relating to the sentence.

The background facts may be summarized briefly. Bean and his codefendant, William Caudill, were tried jointly on a charge of premeditated homicide, committed by luring the victim to a place where he was stabbed repeatedly. During the trial, Caudill took the witness stand. He testified that Bean had planned the murder and had inflicted virtually all of the victim's wounds. Bean's attorney vigorously cross-examined Caudill about some discrepancies in his story and about his obvious incentive to put the blame on Bean. After the testimony was concluded, there was a conference in the judge's chambers during which Bean said Caudill's testimony had been so harmful that he felt compelled to testify in response. Bean's attorney counseled him not to do so, and Bean eventually followed his attorney's advice. A jury later found both defendants guilty as charged. Caudill received an indeterminate life sentence, making him eligible for possible parole in

ten years. Bean, as we have noted, received a fixed life sentence without parole. The judgments of conviction were upheld by our Supreme Court in *State v. Caudill,* 109 Idaho 222, 706 P.2d 456 (1985), and *State v. Bean,* 109 Idaho 231, 706 P.2d 1342 (1985).

Several years after the trial, Caudill sent a letter to a newspaper, declaring that he had fully participated in the murder and that his trial testimony had been unfair to Bean. He later stated, in a sworn deposition, that he had "lied through [his] teeth" in attempting to portray Bean as the individual primarily responsible for the murder. He went on to say that he, not Bean, had developed the plan for luring the victim to the place where he was killed. Caudill further declared that it was he who initially stabbed the victim, that a struggle ensued, and that Bean "finished" the killing at Caudill's request.

Relying on this new information, Bean filed his application for post-conviction relief. He claimed that Caudill's perjury at trial had tainted the conviction for first degree murder and, in any event, that he should not be imprisoned longer than Caudill. Bean's application also raised other issues that were—or should have been—presented in the direct appeal from his judgment of conviction. Those issues need not be considered here. I.C. § 19–4901(b); *LePage v. State,* 109 Idaho 581, 710 P.2d 10 (Ct.App.1985). The district court denied the application, and this appeal followed.

I

■ We first consider Bean's conviction of first degree murder. He argues he is entitled to a new trial in light of Caudill's recantation. In order for a convicted defendant to receive a new trial due to recanted testimony, he must make a showing (a) that the testimony given at trial was false; (b) that the testimony was material to the outcome; and (c) that he was diligent in challenging the testimony, or did not know of its falsity until after the trial.[1]

---

1. In the present case, the state has argued that

Bean is not entitled to relief because the testi-

*See State v. Scroggins,* 110 Idaho 380, 384, 716 P.2d 1152, 1156 (1985), *cert. denied,* 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986); *State v. Lawrence,* 112 Idaho 149, 730 P.2d 1069 (Ct.App.1986) (review denied). *See also State v. Lankford,* 116 Idaho 860, 873–74, 781 P.2d 197, 210–11 (1989) (quoting from *State v. Lawrence, supra*). These requirements are based, with some modification, upon the three-part test enunciated in the seminal case of *Larrison v. United States,* 24 F.2d 82 (7th Cir.1928).

The first requirement is a showing that the trial testimony was false. Here, the state does not contest the obvious fact that Caudill's deposition impugns his prior testimony at trial. If the deposition is true, part of the trial testimony is false. Similarly, with respect to the third requirement, the state does not deny that Bean attempted to guard against Caudill's testimony. Bean sought separate trials, and he later tried to discredit Caudill's testimony through vigorous cross-examination. Accordingly, for the sake of discussion, we will deem the first and third requirements to be satisfied.[2]

Thus, our focus is narrowed to the second requirement—that the false testimony must have been material. The standard of materiality for recanted testimony is whether it reasonably could have affected the outcome.[3] *State v. Lawrence,* 112 Ida-

ho at 152–53, 730 P.2d at 1072–73. Here, the district court did not think this standard had been satisfied. We agree.

The recanted version of Caudill's testimony, as set forth in his deposition, did not absolve Bean of participation in the killing. Although Caudill admitted that he had inflicted some knife wounds upon the victim, he also stated that Bean had completed the killing by repeatedly stabbing the victim in the chest. The crucial inquiry, therefore, is whether the recanted testimony was material to the issue of premeditation—an element of first degree murder as charged in this case.[4]

On this point, Caudill's deposition did not entirely undercut his trial testimony. Although he stated in the deposition that he devised the plan for luring the victim to the murder site, Caudill also acknowledged that Bean was aware of the plan. He further acknowledged that while he and Bean were at the murder site, waiting for the victim to arrive, one or both of them told a female acquaintance that a killing was about to occur. Moreover, Caudill's deposition did not change the testimony of numerous other witnesses at trial, who said that Bean—before the murder—talked about killing the victim. Neither did the deposition change testimony at trial that Bean and Caudill had gone looking for the

mony in question was given by a codefendant rather than by a government witness. This distinction is without a difference under the modern view of due process. The state cannot allow a person to be, or to remain, incarcerated on the basis of falsehoods. The state's failure "to act to cure a conviction founded on a credible recantation ... constitute[s] a due process violation" regardless of whether the prosecutor knowingly used perjured testimony to obtain a conviction. *Sanders v. Sullivan,* 863 F.2d 218, 224 (2d Cir.1988).

2. The state has argued that the third requirement cannot be satisfied absent a showing that the false testimony came as a "surprise" to the defendant. There is some mention of surprise in *Larrison v. United States, supra.* However, courts today generally view the surprise language as an expression of the more generic requirement of due diligence. *See generally* Note, *I Cannot Tell a Lie: The Standard for New Trial in False Testimony Cases,* 83 MICH.L.REV.

1925 (1985). We are among those courts. *See State v. Lawrence,* 112 Idaho at 152 n. 2, 730 P.2d at 1072 n. 2.

3. It has been suggested that where the testimony was given by a nongovernment witness, the test of materiality should be whether the recantation *probably* would produce a different result. *E.g., Sanders v. Sullivan, supra,* n. 1. However, we need not decide that question today. As we explain *infra,* the recantation in this case does not even satisfy the less stringent test of whether it *reasonably could* have affected the outcome.

4. Bean was not charged under I.C. § 18–4003(d) with so-called felony murder, even though the victim was robbed as well as killed. Neither did the state argue in this appeal that the felony murder provision should be applied. Any retrospective modification of the charged offense would be an improper variance from the prosecutor's information.

victim, with the stated purpose of killing him, on two occasions before the murder occurred.

Upon this record, we hold that the recantation of Caudill's testimony could not reasonably have affected the outcome of the trial. Because the materiality requirement was not satisfied, the district court acted properly in refusing to vacate the jury's verdict, finding Bean guilty of first degree murder.

## II

■ We now turn to the fixed life sentence. As mentioned at the outset of this opinion, I.C. § 19–4901(a)(4) provides that post-conviction relief may be available if "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction *or sentence* in the interest of justice...." (Emphasis added.) Bean's application for post-conviction relief alleged that his sentence was unfair in light of Caudill's culpability, as reflected in the recantation. Bean's application contained a prayer for relief specifically requesting that his sentence be changed to "a term of years not to exceed the period of time presently being served by co-defendant Caudill...."[5]

The district court gave oral and written reasons for its denial of Bean's application. In each instance, however, the court focused entirely upon the question of whether Bean was entitled to have his conviction set aside in light of Caudill's recantation. The court did not rule on whether the recantation was material to the sentence imposed. Although the judge's order contained a concluding statement that post-conviction relief would be denied "on each and every point," we cannot infer from that

cursory language that the court considered and passed upon Bean's challenge to his sentence under I.C. § 19–4901(a)(4).

Neither is the issue one that we can resolve *sua sponte* on appeal. The sentencing judge (who later retired and did not preside at the post-conviction relief proceeding) furnished a two-part explanation of the sentences imposed upon Bean and Caudill. First, he entered memorandum decisions under I.C. § 19–2515, declining to impose the death penalty on either defendant. He particularly noted that Bean (like Caudill) was a youthful offender and the product of a broken home. The judge gave the second part of his explanation when he sentenced both defendants in open court:

[THE COURT]: Let's turn our attention to Mr. Bean.... *I do feel there is a great deal of culpability* in this offense that you participated in and in resolving that matter it is a conclusion of the Court that I would sentence you to a determinate period of time, your life, to the State Board of Correction, of the Idaho State Penitentiary.

Any questions?

DEFENDANT BEAN: No, Your Honor.

[PROSECUTOR]: That is a determinate sentence, Your Honor?

THE COURT: That is a determinate period of time, it will be determined a life sentence.

Mr. Caudill ... I would sentence you to an indeterminate period of time in the Idaho State Penitentiary, not to exceed your life. You will be confined under the direction of the State Board of Correction.

[PROSECUTOR]: Indeterminate?

THE COURT: Yes. *The reason for that is that there is a slight, slight degree of*

---

5. The application referred to a "term of years" because—according to Bean—Caudill's sentence had been commuted from indeterminate life to an indeterminate period not exceeding twenty-two years, thereby hastening his parole eligibility. Any such commutation is an extraordinary act of executive clemency, based upon a constitutional power independent of judicial authority. *See* Article 4, § 7, Idaho Constitution. In a first degree murder case, judges have authority only to impose the death penalty or to impose a sentence of life imprisonment. I.C. § 18–4004;

*State v. Wilson*, 107 Idaho 506, 690 P.2d 1338 (1984). Here, under the law governing this case, a sentence of life imprisonment could have taken one of two forms: fixed (determinate) life or indeterminate life. Therefore, Bean had no basis to ask the district court for post-conviction relief changing his sentence to a "term of years" equal to Caudill's commuted sentence. However, his application did raise a cognizable issue as to whether his sentence should have been for indeterminate life rather than fixed life, in light of Caudill's recantation.

*culpability* evaluated in that sense, in that matter by this Court.... [Emphasis added.]

It is not clear exactly what the judge meant by "a great deal of culpability" in reference to Bean or by a "slight, slight degree of culpability" in reference to Caudill. However, it does appear that relative culpability played a significant part in the judge's decision to impose different sentences upon the two defendants. Relative culpability is, of course, one of many factors to be considered in pronouncing a just sentence under Idaho's individualized sentencing system. *See generally State v. Lopez*, 106 Idaho 447, 680 P.2d 869 (1984) (codefendants convicted of same crime may receive differing sentences in light of individual circumstances). The process of weighing one factor against another in pronouncing a sentence, or in evaluating the materiality of new evidence with respect to a sentence, is a function properly to be performed by the district court. We will not usurp that court's prerogative by addressing the sentence issue for the first time on appeal.

Accordingly, that portion of the district court's order which denies post-conviction relief "on each and every point" is vacated. The case is remanded for an express ruling on Bean's post-conviction relief application as it pertains to his fixed life sentence. The court shall determine whether Caudill's recantation is material to the sentence and, if so, whether justice requires the sentence to be changed. We intimate no view concerning the ultimate resolution of those questions.

In all other respects, the district court's order denying the application for post-conviction relief is affirmed. No costs awarded on appeal.

WALTERS, C.J., concurs.

SWANSTROM, Judge, concurring specially.

I concur in the result in Part I. I concur fully in Part II.

I agree with my colleagues in Part I that Bean fails to meet the three-part test enunciated in *Larrison v. United States*, 24 F.2d 82 (7th Cir.1928). However, this case and the case of *State v. Lankford*, 116 Idaho 860, 781 P.2d 197 (1989), recently decided by our Supreme Court, have raised doubts in my mind whether the *Larrison* test is or ought to be the standard for deciding motions for new trials based on recantation of testimony where neither a "government" witness is involved nor any prosecutorial misconduct is shown. I am also persuaded by the analysis and reasoning of *Sanders v. Sullivan*, 863 F.2d 218 (2d Cir.1988), that—without infringing upon an accused's right to receive a fair trial—one of the requirements of the *Larrison* test could be tightened.

Moreover, if I read *Lankford* correctly, the Supreme Court's test of whether recanted testimony is "material" now may be closer to the approach the Court took in *State v. Drapeau*, 97 Idaho 685, 551 P.2d 972 (1976), than to the approach we took in *State v. Lawrence*, 112 Idaho 149, 730 P.2d 1069 (Ct.App.1987) (review denied). In *Lankford*, as in *Drapeau*, the Court makes it clear that recanted testimony is deemed to be "a form of new evidence." *See* I.C. § 19–2406(7). Emphasizing the trial court's discretionary power, the Supreme Court said in *Lankford:*

> The trial judge does not abuse his or her discretion unless a new trial is granted for a reason that is not delineated in the code or *unless the decision to grant or deny a new trial is manifestly contrary to the interests of justice.* (Emphasis added.)

116 Idaho at 873, 781 P.2d at 210.

In *Drapeau*, the Supreme Court applied the widely accepted "Berry" test named after the case of *Berry v. State*, 10 Ga. 511 (1851). The test includes a requirement that the new evidence "probably" would produce a different result. As we noted in *Lawrence*, this factor is perceptibly different from the statement later made in *State v. Scroggins*, 110 Idaho 380, 385, 716 P.2d 1152, 1157, *cert. denied*, 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986), that "where a defendant makes a showing that such changed testimony *may be material*

to a finding of guilt or innocence, a new trial should be held." (Emphasis added.)

In *Lankford,* the Supreme Court quoted parts of the district court's order denying a motion for new trial, including the following statement:

> It is the opinion of this Court that it *cannot* be said that the recantation reasonably could affect the outcome of the trial. *Furthermore, this Court does not conclude that evidence of the recantation would probably produce a different verdict.* [Emphasis added here.] Finally, and based upon the foregoing, the recantation evidence does not, in the interests of justice, require that a new trial be granted.

116 Idaho at 875, 781 P.2d at 212. Although the Supreme Court affirmed the district court's order on the basis that the district court found the recanted testimony not to be credible, the language used by the district court above was seemingly approved. It suggests, at least, that an element of the "Berry" test still plays a part in determining whether recanted testimony is "material." I would prefer that it does. Even so, my concerns are academic in this case. I agree that even under the less structured *Larrison* test, Bean has not shown entitlement to a new trial.