809 P.2d 493

**Scott D. BEAN, Petitioner-Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 18605.**

Supreme Court of Idaho,
Idaho Falls, September 1990 Term.

April 2, 1991.

Marvin R. Stucki, Idaho Falls, for petitioner-appellant.

Jim Jones, Atty. Gen., and Lynn E. Thomas, Sol. Gen., argued, Boise, for respondent.

BAKES, Chief Justice.

This Court, having granted a petition for review of the decision of the Court of Appeals in the above entitled matter, affirms the decision of the Court of Appeals, except as hereinafter modified.

The Court of Appeals concluded that, on remand, "The [trial] court shall determine whether Caudill's recantation is material to the sentence and, if so, whether justice requires the sentence to be changed." 119 Idaho 506, 809 P.2d 506 (Ct.App.1990). We agree with the Court of Appeals that on remand the first determination which the district court must make is whether or not the changes in Caudill's testimony are material to the sentence imposed upon Bean, given the fact that Caudill's revised testimony still implicates Bean as participating in the first degree murder. If the trial court concludes that Caudill's revised testimony is material to the sentence imposed on Bean, then the trial court must determine whether or not Caudill's revised testimony is true. If the court determines that it is not, then it may summarily deny relief. However, if the court determines that Caudill's revised testimony is both material and that it is true, then the court should make the final determination required in the Court of Appeals opinion, i.e., "whether justice requires the sentence to be changed."

The decision of the Court of Appeals, as herein modified, is affirmed.

JOHNSON, BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice concurring in part and dissenting in part.

There is much in the Court's opinion with which I can readily agree. However, the opinion of the Court of Appeals, as viewed with due respect and regard for the content of the clerk's record and the reporter's transcript, convinces me that the contentions raised by appellant Scott Bean justify a more detailed discussion and treatment than the majority opinion for this Court provides. In particular, it appears that the wrong test was used to review Bean's petition based on Caudill's recanted testimony.

The trial judge, the Honorable Boyd Thomas, a now retired district judge, according to all appearances and based on Caudill's testimony, affixed far greater culpability on Scott Bean than on Caudill. We have been advised that Bean's counsel made the determination that no good purpose could be served by Bean taking the witness stand to assert that Caudill's testimony was untrue; and that such would have only resulted in a swearing match between the two codefendants which would net Bean nothing, especially where Caudill had already occupied the witness stand. Caudill, the entrepreneur who later experienced pangs of guilt and an impugning conscience, wrote to the Idaho Falls Register that he had sworn falsely in his trial testimony as to the extent of Bean's involvement in the murder. This did not take place, however, until the independent, separate appeals of both Caudill and Bean had been turned aside by this Court.

The record on this appeal discloses that Bean, on learning of Caudill's written letter admitting his perjury, sought post-conviction relief on the basis of newly discovered evidence, namely that Caudill by his own admission had prevaricated at a trial where both were tried jointly as codefendants, notwithstanding that Bean's court-appointed counsel had filed and argued a severance motion. The only basic requirement in pursuing this avenue of relief consists of obtaining evidence that was not available at the time of trial, and hence qualifies as newly discovered. The petition came before Judge H. Reynold George. Applying the statutory procedure, Judge George appointed Marvin Stucki as Bean's counsel. Mr. Stucki conducted a deposition of Caudill, based on the information which Caudill had volunteered to the newspaper. Caudill, displaying all of the characteristics of a reformed penitent, stood by his publicized recantation, giving sworn deposition testimony relating to the murder.

Judge George conducted an evidentiary hearing, but was not convinced to award a new trial or conduct a second sentencing hearing. In short, it was his conclusion that the showing was insufficient. After that proceeding was dismissed, Bean sought appellate relief once again, and this time it was the Court of Appeals which heard the argument and wrote the opinion which this Court now has before it. While we should take note of that court's discussion and rulings, we must nevertheless conduct our review by turning directly to the post-conviction relief court and trial court proceedings.

## I. THE CORRECT TEST FOR RELIEF BASED ON RECANTED TESTIMONY

Bean applied for post-conviction relief on the ground that his codefendant had recanted testimony adverse to Bean that was admitted at Bean's trial. The district court denied all relief, and the Court of Appeals upheld that part of the district court order denying Bean relief from his conviction. However, the Court of Appeals remanded the cause for an express ruling on Bean's post-conviction relief application as it pertains to his sentence, and for a determination whether the codefendant's recantation is material to Bean's sentence, and if so, whether justice requires the sentence to be changed. The State requested and we granted review. As this appeal presents questions of law, this Court exercises free review.

Neither the district court nor the Court of Appeals applied the correct test for determining whether, on the basis of the recanted testimony, Bean should be entitled to post-conviction relief as to his conviction and sentence. While I agree with the result of today's opinion, I am compelled to point out that the correct test apparently will also not be used by this Court.

Scott Bean and his codefendant, William Caudill, were both convicted of first degree murder for the October 28, 1981, murder of Neal Walker in Idaho Falls. Caudill received an indeterminate life sentence, but Bean was handed a determinate life sentence. Bean was sentenced August 3, 1982, and the convictions and sentences of both Bean and Caudill were upheld by this Court in unanimous opinions. *State v. Caudill,* 109 Idaho 222, 706 P.2d 456 (1985); *State v. Bean,* 109 Idaho 231, 706 P.2d 1342 (1985). On our review of Caudill's conviction and sentence, this Court noted that:

> Caudill's defense consisted of admitting involvement with the crime, but pointing the finger of guilt for the actual murder to Bean. Bean's defense consisted of admitting murdering Walker but denying that he had the requisite intent....

*Caudill,* 109 Idaho at 226, 706 P.2d at 460. Only Caudill took the stand and testified at trial; Bean wanted to testify in response to Caudill's slanted (and perhaps false) testimony, but was counseled by his attorney not to do so. In its *Caudill* opinion this Court summarized the evidence:

> The evidence reflected that Caudill entered into a plan to murder the victim; that in preparing to carry out the plan, he made weapons available at the place where the murder was to occur; that he invited the victim to the crime scene on the pretext that he wanted to deal in drugs; that he slashed the victim's throat and stabbed him in the back; that [Bean] repeatedly stabbed the victim and that the victim died from the wounds inflicted.

*Caudill,* 109 Idaho at 228, 706 P.2d at 462.

On April 7, 1985 the Idaho Falls Post Register published a letter by Caudill, which Caudill mailed to the newspaper from jail. Here is the full text of the letter:

Editor, The Post–Register:

I am writing you in regard to my murder trial, which took place in Idaho Falls approximately three and one-half years ago; it has been put on my heart to write you this letter of reconciliation.

As you may recall, I maintained at the time of my trial that I did not participate in the murder; however, this of course, is not true. Without going into needless details, basically the information that the state brought forward was true. I was too afraid and dishonest at the time to admit it.

I suppose I'm bringing this to you since it is in your power to provide the truth to the public in this matter. What I did was an injustice to that man and his family, to say the least, even more so was an injustice done to Scott Bean and his family and the community of Idaho Falls by not telling the truth about what happened.

There is no way to make up for what has been done, for this I am truly sorry, but perhaps if everyone knew the truth ... things may finally be put to rest.

Believe me sir, I do not wish to reopen old wounds, but to be honest, I felt that this will end the guilt that I feel, at least the guilt of my untruth, anyway.

I truly thank you sir, for your time. I do hope and pray that you will take this and use it to bring the truth out to those in your community about what happened.

/s/ William Brian Caudill

Exh. 1, attached to the March 17, 1986, Deposition of William Caudill.

On the basis of this letter sent to the newspaper, Bean filed a petition for post-conviction relief with the district court. Caudill was later deposed by Mr. Bean's court-appointed attorney, in an effort to discover with specificity what trial testimony Caudill was recanting. At one point in the deposition, Caudill stated:

> To kind of clear this up, if I could take back everything I said at trial, I would, because I'd have to say honestly that

about 90 percent of it wasn't true or it was twisted.

March 17, 1986, Deposition of William Caudill at 11. At the deposition Caudill related that he alone arranged for the victim to arrive at the crime scene; that he did not plan to act in concert with anyone; that he was the first to draw blood from the victim and inflict a potentially fatal injury by stabbing the victim in the back and then slashing the victim's throat; and that Bean was then directed by Caudill to stab the victim as the victim was held down by Caudill.

The district court conducted a hearing August 27, 1987, and shortly thereafter issued a written order which provided findings, conclusions and the decision denying all relief. The court's basis for denying relief rested mainly on the observation that both defendants had admitted the crime to third parties, and those third parties had testified to the admissions at trial. Furthermore, the court reached the conclusion that although Caudill now admitted that the State's version of the facts was correct, that provided no ground for relief because the jury must have believed the State's version, and not Caudill's version, in order to convict Bean of first degree murder:

> The fact that stands out most prominently upon review of the full transcript of the murder trial is that the jury must have disbelieved Mr. Caudill, otherwise they would not have found him guilty of First Degree Murder. The most damaging evidence came from the mouths of friends or acquaintances of the two defendants having to do with inculpatory admissions made. For example, Joni Campbell testified (see transcript p. 436

ff) in speaking of a conversation with Mr. Caudill, she said Mr. Caudill said:

> He told me and Lynda Charboneau not to go to the apartment, they had killed somebody up there. (Tr. 438)

. . . .

In the letter to the editor Caudill admitted that the evidence brought forth by the State was true. It was this 'true' evidence that convicted both defendants. R. 25–26.

On Bean's appeal from the district court's denial of post-conviction relief, this Court assigned the case to the Court of Appeals. That court, after a thorough analysis, concluded that based on I.C. § 19–4901(a),[1] relief both as to the conviction and the sentence imposed might be justified. The Court of Appeals considered the petition as a request for new trial, or in the alternative as a request for a reduction in sentence, and took note that under I.C. § 19–4901(a)(4) post-conviction relief may be based upon "evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice."

There is reason to believe that neither the district court nor the Court of Appeals were applying the proper test to determine whether a new trial or sentence reduction should be awarded. The Court of Appeals could not unanimously agree upon the test for a new trial based upon the discovery that trial testimony has been recanted. A majority stated that:

> In order for a convicted defendant to receive a new trial due to recanted testimony, he must make a showing (a) that the testimony given at trial was false;

---

1. I.C. § 19–4901(a) provides that:
   Any person who has been convicted of, or sentenced for, a crime and who claims:
   (1) that the conviction or the sentence was in violation of the Constitution of the United States or the Constitution or laws of this state;
   (2) that the court was without jurisdiction to impose sentence;
   (3) that the sentence exceeds the maximum authorized by law;
   (4) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;
   (5) that his sentence has expired, his probation, or conditional release was unlawfully revoked by the court in which he was convicted, or that he is otherwise unlawfully held in custody or other restraint; or
   (6) that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy:
   may institute, without paying a filing fee, a proceeding under this act to secure relief.

(b) that the testimony was material to the outcome; and (c) that he was diligent in challenging the testimony, or did not know of its falsity until after the trial. *Bean v. State*, 119 Idaho 645, 646, 809 P.2d 506, 507 (1990) (footnote omitted). The majority's interpretation of materiality, the second requirement, was "whether [the recanted testimony] reasonably could have affected the outcome." *Bean*, 119 Idaho at 647, 809 P.2d at 508 (footnote omitted).

Judge Swanstrom, concurring specially, did not agree with the court's interpretation of the second requirement. Relying upon *Sanders v. Sullivan*, 863 F.2d 218 (2d Cir.1988), Judge Swanstrom reasoned that where neither a government witness nor prosecutorial misconduct are involved, the test for materiality should be whether the recantation probably would (not reasonably could) produce a different result.

The tests announced by both the majority and specially concurring opinions of the Court of Appeals do not comport with Idaho precedent. This conclusion is readily reached on examination of the *Sanders* opinion. In *Sanders*, the federal court discussed a petition based on recanted testimony given at a state trial. No government witness or prosecutorial misconduct was involved. The Court noted that:

> There is no logical reason to limit a due process violation to state action defined as prosecutorial knowledge of perjured testimony or even false testimony by witnesses with some affiliation with a government agency. Such a rule elevates form over substance.

*Sanders*, 863 F.2d at 224. Nevertheless, the *Sanders* Court restricted "the less stringent test of *Larrison v. United States*, 24 F.2d 82 (7th Cir.1928), which would grant a new trial if the court determines that the new evidence 'might' alter the verdict of the jury," to cases alleging the knowing use of false testimony by the State. *Sanders*, 863 F.2d at 225.

*Larrison*, cited by the Court of Appeals in *Bean*, is a less stringent test than that applied to a petition for relief based upon newly discovered evidence. Relief will be awarded on the basis of new evidence if the new evidence is material, not cumulative, and would "probably" result in an acquittal upon retrial. *See* 3 C. Wright, *Federal Practice and Procedure: Criminal § 557* (2d ed. 1982). Wright cites to *Berry v. State*, 10 Ga. 511 (1851), as the point of origin of this test of new evidence. Wright and the *Berry* test were utilized by this Court in *State v. Drapeau*, 97 Idaho 685, 551 P.2d 972 (1976) (new trial denied because new evidence—affidavit of cell mate that the defendant was tricked and threatened into signing a statement—could have been discovered with a reasonable amount of diligence, and a different verdict would not probably result on retrial).

Beginning with *Drapeau* and *State v. Scroggins*, 110 Idaho 380, 716 P.2d 1152 (1986), this Court recognized that the tests for a new trial were different, depending upon whether the new trial request was based on discovery of new evidence (the *Drapeau* "probable" test) or whether a material witness recanted testimony (the *Scroggins* "might" test). In *Scroggins*, the defendant's co-defendant, Beam, recanted. The Court, citing to *Larrison*, stated that the record was not sufficiently developed to conclude that the trial court had abused its discretion in denying the new trial request. However, *Scroggins* established that the less stringent *Larrison* test for a new trial applied to petitions based upon recanted testimony in Idaho.

The *Drapeau* and *Scroggins* tests were followed by both this Court and the Court of Appeals (*see, e.g., Estes v. State*, 111 Idaho 430, 725 P.2d 135 (1986) (new scientific evidence would only be grounds for new trial according to *Drapeau*); *State v. Ames*, 112 Idaho 144, 730 P.2d 1064 (Ct. App.1986) (new evidence to support defendant's alibi is measured against the *Drapeau* standard)), until *State v. Lawrence*, 112 Idaho 149, 730 P.2d 1069 (Ct.App.1986).

In *Lawrence*, the Court of Appeals discussed the test for new trial based upon the recantation of testimony by the defendant's husband. In a scholarly opinion, the Court noted the dichotomy between *Drapeau* and *Larrison* (adopted in *Scroggins* ), and the reason for that dichotomy:

One approach has been to treat the recantation as a form of newly discovered evidence. When a new trial is sought upon such evidence, the moving party must satisfy what has come to be known as the 'Berry' test. This multi-part test, named after the case of *Berry v. State,* 10 Ga. 511 (1851), includes a requirement that the new evidence probably would produce a different result. *Berry* has been adopted in substance by most state and federal courts. 3 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 557 (2d ed. 1982) (hereinafter WRIGHT). It was approved by our Supreme Court in *State v. Drapeau,* 97 Idaho 685, 551 P.2d 972 (1976).

A second approach has been to treat recanted testimony as a problem distinct from newly discovered evidence. Perjured testimony affects the integrity of the judicial process in a way that overlooked evidence does not. WRIGHT § 557.1. Moreover, while a rigorous standard for obtaining a second trial upon new evidence may be justified as an incentive for the parties to marshall evidence and to present it at the first trial, the parties need no such incentive to combat perjury. The seminal decision establishing a distinct test for recanted testimony is *Larrison v. United States,* 24 F.2d 82 (7th Cir.1928). There, as in the present case, a government witness announced after trial that he had given false testimony. The *Larrison* court held that a new trial should be granted when (a) '[t]he court is reasonably well satisfied that the testimony given by a material witness is false,' (b) '[t]hat without it the jury *might* have reached a different conclusion,' and (c) '[t]hat the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.' (Emphasis original.)

*Lawrence,* 112 Idaho at 151–52, 730 P.2d at 1071–72 (footnote omitted).

However, instead of applying the *Scroggins/Larrison* test to the case, the Court of Appeals inexplicably changed the test:

The district judge in the present case did not have the benefit of *Scroggins* when he ruled on the appellant's motion for a new trial. This presumably accounts for the judge's reference to the probability of an acquittal as the 'central' issue framed by the motion. The judge, albeit through no fault of his own, misidentified the test by which the motion was to be decided. The proper test is not whether the recantation of testimony *probably would* produce an acquittal; it is whether the recantation *reasonably could* affect the outcome.

*Lawrence,* 112 Idaho at 153, 730 P.2d at 1073. While I adhere to the rationale announced in *Lawrence* that demands a less stringent test for awarding a new trial based upon recanted testimony, such an unprincipled evolution of the test is unacceptable. The *Lawrence* opinion gives no reason for changing the "might" standard to the "reasonably could" standard.

This Court has quoted heretofore with approval from *Lawrence. See State v. Lankford,* 116 Idaho 860, 781 P.2d 197 (1989). Bryan Lankford had agreed to be a witness against his brother. Bryan later recanted, and this Court reviewed the district court's denial of the defendant's motion for new trial which was predicated upon this recantation. Although this Court's *Lankford* opinion quotes from *Lawrence,* it stops short of including the Court of Appeals reformulation of *Scroggins/Larrison.* This omission, if intentional, would suggest that this Court disapproved of the reformulation. However, the district court did apply the *Lawrence* reformulation, and we upheld the district court's denial of a new trial on the ground that the district court did not manifestly abuse its discretion. At most, this portion of *Lankford* stands for the proposition that the district court's application of the wrong standard of materiality was harmless error, because the court made specific findings that Bryan Lankford's recantation was unbelievable. If the recantation is unbelievable, then the first requirement of *Scroggins/Larrison* is not satisfied, and no new trial should have been awarded.

In sum, the test which should be followed on remand begins with the threshold question for any post-conviction petition based on I.C. § 19–4901(a)(4): whether the evidence presented by the petitioner is evidence of material facts not previously presented or heard. A motion for a new trial which is based on recanted testimony presents three questions: (1) whether the testimony given by a material witness was false; (2) whether without that testimony the jury *might* have reached a different conclusion; and (3) whether the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it,[2] or, did not know of its falsity until after the trial. If the answers are that Caudill's testimony at trial was false; that without Caudill's false testimony the jury *might* have reached a different conclusion as to Bean's conviction; and that Bean was unable to meet the false testimony or did not know of its falsity until after trial, then Bean is entitled to a new trial. A review of Bean's sentence utilizing this same test should be made only if Bean's request for a new trial fails, because a grant of a new trial would automatically require that the judgment of conviction and the imposed sentence be reversed.

## II. CONSIDERATIONS FOR FURTHER PROCEEDINGS

Bean and Caudill were jointly tried and sentenced by Judge Boyd Thomas, who has since retired. Although they were jointly tried and sentenced, each took a separate appeal. The reported cases, *State v. Caudill,* 109 Idaho 222, 706 P.2d 456 (1985), and *State v. Bean,* 109 Idaho 231, 706 P.2d 1342 (1985), contain a *facially* accurate account of the trial and the disparate sentencing. Not involved there was the evidence which would surface later. No jury has as yet passed its judgment while being possessed of knowledge that the State's prime witness as to the supposed and presented

facts was a perjurer. The sentencing judge who meted out a fixed life sentence to Bean, and to Caudill only an indeterminate life sentence, appears unequivocally to have been greatly influenced by Caudill's testimony.

Caudill, after serving a few years of his indeterminate life sentence, began experiencing pangs of remorse and guilt in having lied to the jury in his testimony, conceding that much of what he had said at trial as to Bean's implication was untrue. Caudill wrote to the editor of the Idaho Falls Register that he had lied as to the extent of Bean's involvement and felt obliged to make amends. Bean's counsel took Caudill's deposition, and in that manner Caudill's recanting became sworn testimony. Bean, not denying his culpability as a participant in the murder, sought post-conviction relief in the nature of a reduced sentence, and the Court of Appeals and this Court have properly considered the petition as a request for new trial in the alternative.

Judge Thomas, as above stated, had retired; the post-conviction proceeding was presided over by H. Reynold George, district judge, who prior thereto had no involvement in either of these cases. The Court of Appeals, on its review of what Judge George had decided, was similarly unable to fully divine and comprehend the impact that Caudill's trial testimony unquestionably had upon the jury and sentencing judge. Such considerations should be carefully taken into account in all further proceedings, with special emphasis as concerns displaying the rationalization by which the trial court discounted as worthless Caudill's recantation letter and trial deposition.

Moreover, Caudill's credibility is *not* an issue for *decision* by the courts, but rather by a jury which is the trier of all material issues of fact in criminal cases. It is clearly the law that if Caudill's recantation let-

---

**2.** To meet and rebut the false testimony of a material witness, that witness may be revealed as a liar through the presentation of other, more reliable but nevertheless contradictory testimony. Of course, this strategy assumes that the party prejudiced by the false testimony knew it was false when the testimony was given, *and* was able to react at trial through the presentation of other testimony.

ter had been received and published before the trial had been fully concluded, there would have been grounds for a continuance so that this issue of Caudill's credibility would or could have been fully developed. Such newly discovered evidence simply was not available until such time as Caudill made it available. It *is now* available. Accordingly, it is improper for this Court to intimate that a judge rather than a jury can decide the issue relative to Caudill's newly available testimony and, in connection therewith, his credibility.